Lawrence J. FERRARA,
Plaintiff-Appellant,

v.

Thomas MILLS, et al.,
Defendants-Appellees.

No. 85–5107.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1986.

I. Jeffrey Pheterson, Lake Worth, Fla., for plaintiff-appellant.

James K. Green, West Palm Beach, Fla., for amicus-ACLU.

Richard L. Oftedal, Robert D. Moses, West Palm Beach, Fla., for Mills, Monroe.

Before VANCE and HATCHETT, Circuit Judges, and ATKINS *, Senior District Judge.

HATCHETT, Circuit Judge:

In this civil rights action a public school teacher contends that school administrators assigned him an inferior teaching schedule in retaliation for his criticism of school policies. The district court granted summary judgment for the school administrators. We affirm.

## FACTS

Lawrence J. Ferrara, the appellant, has been employed with the Palm Beach County School Board, Palm Beach, Florida, as a teacher since 1965. He has taught in the social studies department of John I. Leonard Community High School in Lake Worth, Florida, since 1970. Traditionally, he taught eleventh and twelfth grade American history and political science courses between 6:45 a.m. and 2:15 p.m. on school days.

In January, 1980, Ferrara spoke out against the high school's use of collegiate registration, a procedure through which students are permitted to choose their subjects and teachers. At a meeting of the high school faculty in the spring of 1981, the faculty expressed general disapproval of collegiate registration and recommended to Principal John Munroe that the practice be discontinued. Consistent with this recommendation, Munroe abolished collegiate registration.

Later that term, on June 10, 1981, at Ferrara's request, Munroe and Ferrara met "to discuss several items regarding the assignment of [Ferrara's] subjects for the coming 1981–82 school year." Ferrara reiterated his request to teach a newly instituted advanced history course and expressed his disapproval of the practice of filling teacher vacancies within the social studies department with physical education teachers and athletic coaches. Ferrara expressed particular displeasure at the fact that one of the physical education teachers assigned to teach a social studies course was not certified in the field of social studies, and suggested that such out-of-field placement of teachers contributes to "civic illiteracy." [1]

Sometime after the June, 1981, meeting, Munroe assigned Ferrara to teach elective courses to ninth and tenth graders between 9:45 a.m. and 5:15 p.m., rather than the required courses which he had traditionally taught to eleventh and twelfth graders between 6:45 a.m. and 2:15 p.m.

On October 22, 1981, Luke Thornton became the principal of John I. Leonard Community High School. Thornton declined Ferrara's request to alter his course assignments to those which he had traditionally taught, and Ferrara completed the term under the new schedule. At the beginning of the next school term, Ferrara renewed his request that his traditional

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Ferrara defines civic illiteracy as "inadequate knowledge of students graduating from the public school system regarding fundamental civic matters such as American History and failure to understand the most basic facts about state and local political processes."

class schedule be reinstated. Thornton again denied the request.

"Follow[ing] the required procedures," Ferrara solicited the assistance of Thomas Mills, the superintendent of schools for Palm Beach County. Dissatisfied with Mills's decision not to alter his schedule, Ferrara took his grievance to the Palm Beach County School Board. The school board also declined to intervene. Thereafter, Ferrara allegedly became inflicted with severe headaches, psoriasis, insomnia, and other stress-related disorders and, consequently, was not able to work for the remainder of the 1981–82 school year.

On July 29, 1982, pursuant to 42 U.S.C.A. § 1983 (West 1971) and the first and fourteenth amendments to the Constitution, Ferrara filed this action against Munroe, Thornton, Mills, the School Board of Palm Beach County, Paula Nessmith, Arthur Bougae, George Bailey, Louie Eassa, Susan Pell, Robert Howell, and Samuel Lovell, all members of the Palm Beach County School Board, asserting that they had infringed his constitutional right to free speech by retaliating against him for speaking out against school policies.[2] Ferrara also brought a pendent state tort claim for intentional infliction of emotional distress.

The district court dismissed the school board and its members on the ground that they could not be held vicariously liable for the other defendants' actions under section 1983. The remaining defendants, Munroe, Thornton, and Mills (the school administrators), filed a motion for summary judgment on the ground that under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), Ferrara had failed to meet his burden of establishing that his speech related to matters of public concern.

On November 14, 1984, the district court concluded that "[Ferrara's] speech, while tangentially related to matters of public concern, constitute[d] nothing more than a series of grievances with school administrators over internal school policies" and, therefore, was not protected under the first amendment. *Ferrara v. Mills*, 596 F.Supp. 1069, 1071 (S.D.Fla.1984). The district court also dismissed Ferrara's pendent state claim for lack of jurisdiction and entered summary judgment in favor of Munroe, Thornton, and Mills.[3]

## CONTENTIONS OF THE PARTIES

Ferrara challenges the district court's entry of summary judgment in favor of the school administrators on two grounds. First, he argues that disputed issues of material fact exist as to the time, place, manner, and context of his speech. Second, he contends that the district court erred in imposing upon him the undue burden of affirmatively proving that his speech related to matters of interest to the community at large, rather than imposing upon the school administrators the burden of proving that the speech related only to matters of personal interest to him.

The school administrators argue that the time, manner, and context of Ferrara's speech illustrate that the speech related only to Ferrara's course assignments, a matter not of public concern, but of interest only to Ferrara.

## ISSUES

The issues which we address are: (1) whether the district court correctly allocated the relevant burdens of proof, and (2) whether Ferrara's speech related to matters of public concern.

2. On August 20, 1984, over a year after he had filed an amended complaint, Ferrara moved the district court to file a second amended complaint which included an allegation that in further retaliation against him for the exercise of his right to freedom of speech, Thornton initiated the NEAT (notification, explanation, assistance, and time) procedure against him. The NEAT procedure is allegedly the first step in the process through which tenured teachers are terminated. The district court denied Ferrara's

motion to amend, but without prejudice to Ferrara's raising the issue at trial.

3. On December 21, 1984, the district court denied Ferrara's motion for reconsideration and/or motion to alter or amend. Thereafter, on February 28, 1985, the district court denied the defendants' motion for attorney's fees and denied in part and granted in part their motion for costs. No appeal is taken from this latter order.

## DISCUSSION

Because of some confusion in this area of the law, we begin our discussion with an outline of the analytic framework which gives definition to our consideration of Ferrara's first amendment claim.

### I. Analytic Framework

#### A.

■ To prevail on his claim that the school administrators infringed upon his first amendment right to freedom of speech, Ferrara must establish prima facie that his speech (1) is constitutionally protected, and (2) was a substantial or motivating factor in the decision to alter his teaching assignments. If Ferrara is successful in making this initial showing, the burden then shifts to the school administrators to show by a preponderance of the evidence that they would have altered Ferrara's teaching assignments even in the absence of his protected speech. *Mt. Healthy City Bd. of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Holley v. Seminole County School Dist.,* 755 F.2d 1492, 1500 (11th Cir.1985).

The Supreme Court's most recent explication of the *Mt. Healthy* test is found in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The Supreme Court announced in *Connick* that the question of whether a public employee's speech is constitutionally protected turns upon whether the speech related to matters of public concern or to matters of merely personal interest to the employee. *Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1689–90; *Ballard v. Blount,* 581 F.Supp. 160, 162 (N.D.Ga.1983), *aff'd,* 734 F.2d 1480 (11th Cir.) (unpublished decision), *cert. denied,* —— U.S. ——, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at

147–48, 103 S.Ct. at 1690; *Ballard,* 581 F.Supp. at 162.

■ If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end. With that circumstance present, we need not proceed to determine whether the employee's speech was a substantial or motivating factor in the adverse employment decision.[4] *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689; *Renfroe v. Kirkpatrick,* 722 F.2d 714, 715 (11th Cir.1984); *Ballard,* 581 F.Supp. at 162.

■ If, however, the employee's speech is determined to relate to a matter of public concern and to have been a substantial or motivating factor in the adverse employment decision, the inquiry focuses upon whether the adverse employment decision was justified. *Connick,* 461 U.S. at 149–50, 103 S.Ct. at 1691–92; *see also Givhan v. Western Line Consolid. Sch. Dist.,* 439 U.S. 410, 412, 99 S.Ct. 693, 694, 58 L.Ed.2d 619 (1979). It is only at this point that we balance "the interest of the [employee], as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968); *Connick,* 461 U.S. at 149–54, 103 S.Ct. at 1691–94.

The employee in *Pickering,* a public school teacher, wrote a letter to the editor of the local newspaper criticizing the school board's handling of two bond proposals and a proposed tax increase, as well as its allocation of financial resources between academic and athletic programs. *Pickering,* 391 U.S. at 571, 88 S.Ct. at 1736. The issue before the Court was not whether the teacher's speech was constitutionally protected. The issue of the funding of the

---

4. The American Civil Liberties Union, as amicus curiae, argues that we "must assume, for purposes of this legal analysis that Mr. Ferrara was punished for his speech." *Connick* clearly teaches otherwise. If the employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for [his or] her discharge." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689 (footnote omitted).

school system was undeniably "a matter of legitimate public concern." Rather, the issue was whether the teacher's dismissal, which admittedly was prompted solely by the letter to the editor, violated the teacher's first amendment right to freedom of speech. *See Pickering,* 391 U.S. at 565, 88 S.Ct. at 1733.

■ "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Thus, the fact that an employee is retaliated against for exercising constitutionally protected speech does not *automatically* render the disciplinary action unconstitutional. A public employee's free speech rights are not absolute. The employee's interest must be weighed against that of the state to determine which is more compelling in a given situation.

In weighing the competing interests, we must consider such factors as (1) whether the nature of the employer's public responsibilities are such that a close working relationship is essential, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made. *Con-*

*nick,* 461 U.S. at 151–54, 103 S.Ct. at 1692–94.[5]

Both Ferrara and the school administrators urge us to consider the manner, time, and place of Ferrara's speech in determining whether the speech is constitutionally protected. We decline this invitation. Several courts which the parties rely upon fail to enunciate clearly that the analysis consists of three separate and progressive steps. *See McPherson v. Rankin,* 736 F.2d 175 (5th Cir.1984); *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41 (2d Cir.1983); *Ferrara v. Mills,* 596 F.Supp. 1069 (S.D. Fla.1984). The question of whether the employee's speech is constitutionally protected is a different issue from the ultimate question of whether the employer has violated the employee's right to freedom of speech.[6]

■ The manner, time, and place of the employee's speech are factors to be weighed in the *Pickering* balance of the employer's and employee's competing interests. *Connick,* 461 U.S. at 152, 103 S.Ct. at 1693. These factors are not, however, relevant at the first level of the analysis.[7] The *Pickering* balance is not triggered unless it is first determined that the employ-

---

5. "Because of the enormous variety of fact situations in which critical statements by ... public employees may be thought by their superiors ... to furnish grounds for dismissal, [it is not] either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged." *Pickering,* 391 U.S. at 569, 88 S.Ct. at 1735, *quoted in Connick,* 461 U.S. at 154, 103 S.Ct. at 1694.

6. In *Berry v. Bailey,* 726 F.2d 670, 676 (11th Cir.1984), we recognized this distinction between "speech to which no constitutional right attaches [and] speech that, while protected, is ... outweighed by the government's interest." We concluded, however, that it was unnecessary for us to decide in that case into which category the employee's speech belonged because, "[w]hatever the category," the employee's "refusal to perform a duty as a matter of law could not support a finding that [the employee] was discharged for exercising protected first amendments rights." *Berry,* 726 F.2d at 676.

  *Leonard v. City of Columbus,* 705 F.2d 1299 (11th Cir.1983) is not to the contrary. In *Leonard,* we rejected the district court's conclusion that the employee's speech did not constitute

symbolic speech and, therefore, was not protected. Having determined that the employees' speech constituted symbolic speech, we proceeded to balance the employees' interest against that of the employer to determine whether the employees' dismissal violated their right of free speech. *Leonard,* 705 F.2d at 1299.

7. Relying upon *Givhan v. Western Line Conslid. Sch. Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619, (1979), Ferrara argues that the analysis of private speech is different from the analysis of public speech. He contends that when confronted with private expression, our focus should be upon the manner, time, and place of the employee's speech. Where the speech is public, however, he argues that our focus should be upon the content of the speech. Ferrara's reliance upon *Givhan* for this proposition is misplaced. The *Givhan* discussion of the relative weight to be given these factors is addressed to the issue of "striking the *Pickering* balance," and not to the issue of whether the employee has a constitutionally protected interest against which the employer's interest need be balanced. *Givhan,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696 n. 4.

ee's speech is constitutionally protected. If the employee's speech does not relate to matters of public concern, then the employee has no first amendment interest against which the employer's interest need be weighed. *Connick,* 461 U.S. at 149–50, 103 S.Ct. at 1691–92.

■ Several other factors exist which the parties urge us to consider, but which we find inapposite to the limited initial inquiry. Ferrara deems it relevant that he followed established procedures in airing his grievance, thereby avoiding any disruption in the operation of the school. Again, this is a factor to be weighed in the *Pickering* balance to determine whether the employer has infringed upon the employee's constitutionally protected right to freedom of speech. *Connick,* 461 U.S. at 150–52, 103 S.Ct. at 1692–93. It bears no relation to the issue of whether the speech is constitutionally protected.

The school administrators equate the degree of public interest in a subject with the issue of whether the subject is of public concern within the meaning of *Connick. See also Jurgensen v. Fairfax County, Virginia,* 745 F.2d 868, 878–79 (4th Cir. 1984); *Bowman v. Pulaski County Special School District,* 723 F.2d 640, 644 (8th Cir.1983); *McGee v. South Pemiscot School District R–V,* 712 F.2d 339, 342 (8th Cir.1983); *Monsanto v. Quinn,* 674 F.2d 990, 997 (3rd Cir.1982). They point to the alleged lack of publicity surrounding the issues of collegiate registration and out-of-field teacher placement as indicative of the lack of merit in Ferrara's argument that these issues are inherently matters of public concern. The school administrators misconstrue the meaning of the term "public concern."

As Justice Brennan pointed out in his dissent in *Connick:*

The First Amendment affords special protection to speech that may inform public debate about how our society is to be governed—*regardless of whether it actually becomes the subject of a public controversy.*

461 U.S. at 160, 103 S.Ct. at 1697 (Brennan, J. dissenting) (footnote omitted) (emphasis added).

Indeed, it has been suggested that 'a classification that bases the right to First Amendment protection on some estimate of how much general interest there is in a communication is surely in conflict with the whole idea of the First Amendment.' T. Emerson, *The System of Freedom of Expression,* 554 (1970). The degree to which speech is of interest to the public may be relevant in determining whether a public employer may constitutionally be required to tolerate some degree of disruption resulting from its utterance.

461 U.S. at 164 n. 4, 103 S.Ct. at 1699 n. 4 (Brennan, J. dissenting) (citation omitted).

The degree of public interest in a public employee's speech is yet another factor which is relevant only in the context of the *Pickering* balance of the employer's interest in the efficient operation of the public office against the employee's constitutionally protected right to freedom of speech.[8]

■ Thus, the burden of proof is not, as Ferrara argues, upon the school administrators to demonstrate that Ferrara's speech related only to matters of personal interest to him. Rather, the burden of proof is, in the first instance, upon Ferrara to demonstrate, by resort to the content, form, and context of his speech, that the speech related to matters of public concern.

### B.

Rule 56(c) of the Federal Rules of Civil Procedure, requires that a motion for summary judgment be granted "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

8. The cases upon which the school administrators rely in support of this phase of their argument, *Jurgensen, Bowman, McGee,* and *Monsanto,* also characterize publicity as a factor to be weighed in the *Pickering* balance. For reasons which we have explained, these cases err in concluding that the *Pickering* balance is the appropriate test to apply in determining whether the employee's speech is constitutionally protected.

and that the moving party is entitled to judgment as a matter of law."

We are mindful of our statement in *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir.1979), that "[a]s a general rule," summary judgment is particularly disfavored in first amendment cases.[9] The issues before us in *Porter*, however, were issues of fact. The threshold question here of whether Ferrara's speech related to matters of public concern is a question of law, and is therefore, readily susceptible to disposition on summary judgment. *Connick*, 461 U.S. at 148 n. 7 and 150 n. 10, 103 S.Ct. at 1690 n. 7 and 1692 n. 10; *Holley*, 755 F.2d at 1500; *Ballard*, 581 F.Supp. at 162.

The school administrators, as the moving parties on summary judgment, need demonstrate only that no disputed issues of fact material to the determination of whether Ferrara's speech relates to matters of public concern exist. In addressing the propriety of the district court's disposition of the action on summary judgment, we resolve all reasonable doubts and inferences in favor of Ferrara. *Wilson v. Taylor*, 658 F.2d 1021, 1028 (5th Cir. Unit B 1981) (freedom of association claim); *Ballard*, 581 F.Supp. at 162.[10]

## II. Application

Ferrara contends that he spoke out against collegiate registration and out-of-field teacher placement of physical education teachers and athletic coaches because he is genuinely concerned with the quality of public education. The school administrators contend that Ferrara's speech relating to collegiate registration was motivated by his own inability to control his students, and that his speech concerning "civic illiteracy" was made in response to his having been denied for the course assignments which he requested. ▪ We reject Ferrara's contention that the issue of his motivation in making the subject speech is a question of fact which precludes summary judgment. The Su-

preme Court made clear in *Connick* that the issue of whether "a public employee speaks ... as a citizen upon matters of public concern, [rather than] as an employee upon matters only of personal interest" is a question of law which we must answer in light of the subjective factors of the content, form, and context of the speech. *Connick*, 461 U.S. at 147–48 and 148 n. 7, 103 S.Ct. at 1690 and 1690 n. 7.

Ferrara argues that issues relating to public education are intrinsically matters of vital public concern. The Supreme Court has rejected such an argument as overbroad:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case.

*Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. It is precisely because virtually all speech which is made in and about a public employment setting will have some public significance that we must focus upon the content, form, and context of the speech to determine whether the speech is constitutionally protected.

▪ We recognize, as Ferrara points out, that "[t]he question of what constitutes the proper care in education of children is one of the most frequently debated issues in the public forum." *Bowman v. Pulaski County Special School Dist.*, 723 F.2d 640, 644 (8th Cir.1983). It is clear from the context within which Ferrara's speech arose, however, that the speech did not relate to a matter of public concern, within the meaning of *Connick*.

Ferrara concedes that he spoke out against collegiate registration because it contributed to his inability to maintain control of students and to effectively enforce discipline. Although other faculty members voiced opposition to the collegiate reg-

**9.** Fifth Circuit opinions rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

**10.** Fifth Circuit Unit B decisions rendered after September 30, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982).

istration policy, Ferrara's inability to govern his students is undoubtedly a matter of interest only to Ferrara. In any event, Munroe responded to the criticism of collegiate registration and abolished the practice. *See Ballard,* 581 F.Supp. at 164.

■ Ferrara's speech concerning teacher assignments is also "most accurately characterized as an employee grievance concerning internal [school] policy." *Connick,* 461 U.S. at 154, 103 S.Ct. at 1694. We recognize that Ferrara has "not only a right, but also a positive duty to engage in discussions of public affairs," including public education. Gellhorn, *American Rights, The Constitution in Action,* 42 (1960). We also do not doubt Ferrara's sincere interest in and commitment to quality public education. We hold merely that a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run. *Ballard,* 581 F.Supp. at 163 (quoting *Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887, 890 (D.Kan.1983)).

■ Ferrara concedes that his concerns about out-of-field teacher placement were expressed during a meeting which he requested with Munroe to discuss his course assignments for the following academic year.[11] Ferrara's complaint was that another teacher had been assigned to teach an advanced course which he had requested. "The particular courses an individual is assigned to teach simply cannot be viewed as a matter in which the public has a legitimate interest." 581 F.Supp. at 164. While it may have been unfair for the school administrators to have refused to assign Ferrara to the course which he requested, it was not unconstitutional.

Having considered the content, form, and context of Ferrara's speech, we conclude that it cannot fairly be characterized as constituting speech on a matter of public concern. *Connick,* 461 U.S. at 147–48, 103

S.Ct. at 1690–91; *Renfroe,* 722 at 715; *Ballard,* 581 F.Supp. at 162. The school administrators are entitled to judgment as a matter of law on the first amendment claim. Accordingly, we affirm the district court's entry of summary judgment in favor of the school administrators.

No independent basis exists for jurisdiction of Ferrara's pendent state tort claim. Therefore, we also affirm the district court's dismissal of the claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

AFFIRMED.

---

11. Ferrara's speech is no less protected because it was made in private. The Supreme Court held in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415–16, 99 S.Ct. at 693, 696–97, 58 L.Ed.2d 619 (1979), that a public employee's freedom of speech is not lost merely because the employee "arranges to communicate privately with his employer rather than to spread his views before the public."