848 F.2d 1145
 3 Indiv.Empl.Rts.Cas. 789
 Jorge MORALES, Plaintiff-Appellee,
v.
Merritt STIERHEIM, As County Manager of Metropolitan Dade
County, Florida, and individually, and Raymundo Barrios,
individually and as Chairman of the Melrose Community
Development Advisory Board, Defendants-Appellants.
Jorge MORALES, Plaintiff-Appellee,
v.
Merritt STIERHEIM and Raymundo Barrios, Defendants-Appellants.
 Nos. 86-5894, 87-5343.
 United States Court of Appeals,
Eleventh Circuit.
 July 7, 1988.
 
 John McInnis, Cynthia Johnson, Asst. County Attys., Miami, Fla., for defendants-appellants.
 William R. Amlong, Amlong & Amlong, P.A., Ft. Lauderdale, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before VANCE and ANDERSON, Circuit Judges, and BROWN*, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal from the grant of a permanent injunction and an award of compensatory and punitive damages to plaintiff-appellee Jorge Morales under 42 U.S.C. Sec. 1983. The district court found that Morales' job reassignment violated his First Amendment right to free speech. The court reinstated Morales to his former position and enjoined defendant-appellant Merrett Stierheim, County Manager of Metropolitan Dade County, from reassigning Morales. The court also awarded punitive damages against defendant-appellant Raymundo Barrios, Chairman of the Melrose Community Development Advisory Board, and awarded compensatory damages against both defendants. Defendants-appellants, collectively referred to as "OCED,"[1] seek reversal on grounds that the statements by Morales which motivated his reassignment were not constitutionally protected, or alternatively that Morales' reassignment based on the statements did not infringe on his constitutionally protected interest in freedom of expression. For the reasons discussed below, we reverse.
 
 I. BACKGROUND
 
 2
 Jorge Morales is a principal planner for the Metropolitan Dade County Office of Community and Economic Development and was formerly assigned to the Melrose neighborhood target area. The role of OCED in Melrose and throughout Metropolitan Dade County is to formulate and implement plans for channeling federal Community Development Block Grant funds into community development programs. Citizen participation is a requirement for use of these federal funds. The Melrose Community Advisory Board (hereinafter "Board") is the Melrose neighborhood's volunteer citizen group on community development issues. Defendant-appellant Raymundo Barrios serves as its elected chairman. Community groups like the Melrose Board are independent of OCED authority, but work closely with OCED in setting and implementing community development goals.
 
 
 3
 Morales' job as the principal planner for Melrose was to ensure citizen participation through communication with and input from the Board, and to act as liaison between the OCED office and the Board. Morales accomplished this by working closely with Board chairman Barrios in preparing the agenda for Board meetings, and by attending meetings of the Board. At two such meetings, Morales made the statements he later asserted were the basis for his reassignment out of the Melrose target area.
 
 
 4
 On June 19, 1985, Morales and two (out of a total fifteen) Board members attended a meeting of the Board to consider a commercial revitalization program. Barrios presided over the meeting as chairman. Immediately following the meeting, the two attending Board members informed Morales that Barrios had telephoned Board members to cancel the meeting and to tell them to stay away from the meeting. Attributing the poor attendance to Barrios' action, Morales angrily called Barrios a "saboteur," a "hypocrite," and a "Machiavellian politician" who "used the community." Barrios, enraged, replied that Morales should "start looking for another job." At Morales' request, the director of OCED, Dr. Ernest Martin, arranged a June 27 meeting between Morales, Martin, and Barrios to encourage future cooperation on the common goal of community development.
 
 
 5
 Morales and Barrios had a second confrontation at a meeting of the Board on September 17, 1985. The Board questioned a delay in the start of Melrose's garbage clean-up campaign. It had received no reply to a letter Barrios and Board Secretary Mario Delgado had written to OCED Director Ernest Martin to request OCED's assistance in funding the campaign. Morales stated that the letter needed to have been sent timely to OCED, and that Barrios had failed to do so. A heated exchange ensued, in which Barrios declared Morales' remark untrue. Morales replied that he was not lying, and that, "The one who is lying is you." Morales proceeded to answer questions from Board Secretary Delgado about the letter. The meeting then continued through other agenda items with no further disruption.
 
 
 6
 On September 25, 1985, Barrios and Board Secretary Delgado prepared a petition to OCED requesting Morales' transfer out of the Melrose target area, citing Morales' statements to the Board at the September 17 meeting and the Board's inability to communicate with Morales. Twelve of the fifteen committee members and a Melrose neighborhood resident signed the petition. Barrios and Delgado explained the petition, which was in English, to several Board members who spoke no English.
 
 
 7
 Morales responded with an October 2 memorandum to OCED Director Ernest Martin. The memorandum briefly described his dispute with Barrios at the September 17 meeting, labelling Barrios' version of the exchange a distortion of the truth. Morales also stated that Barrios was known for using disruptive tactics, lying, and distorting the facts. He alleged that Barrios' behavior was part of a personal vendetta which Barrios began against him in 1982, after Morales refused Barrios' requests for kickbacks and a political campaign contribution. At the close of the memorandum, Morales wrote, "I consider all this a very serious threat against my integrity, my professional reputation, and my job...."
 
 
 8
 Writing in response to the Board's September 25 petition for Morales' removal, County Manager Merritt Stierheim informed Barrios in a letter dated October 11, 1985, that another member of OCED's staff would be assigned to work with the Melrose Board "...to restore open channels of communication between the Office of Community and Economic Development and your community...." At the close of this letter, Stierheim expressed his commitment to a "positive and effective working relationship with the residents of Melrose." OCED Director Martin later testified:
 
 
 9
 [W]hat was said [at the September 17th Board meeting] ... was not as relevant as the fact that we were not able to meet our obligations to the Federal Government and the community in getting progress in Melrose as a result of this kind of continued disruption....
 
 
 10
 And based on all of those factors, I decided the wisest thing to do would be, as we have done before, is make a rotation of the employee, ... and ... assign new personnel that could get Melrose moving forward on the work program that the residents in the area and the County both agreed they wanted to be done.
 
 
 11
 Trial Transcript at 536.
 
 
 12
 On October 25, 1985, OCED reassigned Morales from Melrose to the Leisure City target area. The reassignment involved no loss of salary, responsibility or benefits for Morales.
 
 
 13
 Morales filed this action under 42 U.S.C. Sec. 1983 for reinstatement, damages, costs and fees, claiming the reassignment infringed upon his First Amendment right to freedom of speech.
 
 
 14
 The district court found as a matter of law that Morales' statements touched upon matters of public concern. It then submitted a special verdict form to the jury. The jury found that Morales' statements were a substantial motivating factor in the decision to reassign him, and that he would not have been reassigned in the absence of the statements. Based on the jury verdict and on the court's own finding that Morales' statements involved matters of public concern, the district court entered judgment for Morales. The district court also issued a permanent injunction reinstating Morales to his former position and enjoining his transfer out of the Melrose target area. The district court granted a stay of the judgment pending the outcome of this appeal.
 
 II. DISCUSSION
 
 15
 Morales argues that OCED reassigned him for engaging in constitutionally protected speech, in violation of his right to freedom of speech under the First Amendment. It is well settled that "a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, --- U.S. ----, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). In order to prevail on his claim, Morales must show that his statements addressed a matter of public concern.[2] If the speech does not touch upon a matter of public concern, then the court may not ordinarily scrutinize OCED's decision to reassign Morales. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir.1986). If the speech at issue does involve a matter of public concern, then the Pickering[3] balancing process is triggered. The determination of whether a public employer had properly discharged an employee for engaging in speech requires a balance between the interests of the employee as a citizen in commenting upon matters of public concern and the interest of the state, as employer, in promoting the efficiency of the public services it performs. Rankin v. McPherson, --- U.S. ----, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); Connick v. Myers, 461 U.S. 138, 149-54, 103 S.Ct. 1684, 1691-94, 75 L.Ed.2d 708 (1983); Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir.1986). We first address whether Morales' speech addressed a matter of public concern, and then turn to the Pickering balancing process.[4] Both issues are questions of law with respect to which the court is required to examine for itself the statements at issue and the circumstances under which they are made to determine whether or not there is First Amendment protection. Rankin v. McPherson, supra; Connick v. Myers, 461 U.S. at 148 n. 7, 150 n. 10, 103 S.Ct. at 1690 n. 7, 1692 n. 10.
 
 A. Speech Addressed Public Concern
 
 16
 The threshold question of whether Morales' statements constituted speech on a matter of public concern "must be determined by the content, form and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690. In determining whether Morales' statements were constitutionally protected, the district court stated without explanation that those statements touched upon a matter of public concern.
 
 
 17
 The parties stipulated that the garbage clean-up campaign for Melrose neighborhood and OCED's failure to implement it are matters of public concern. We agree, and we conclude that Morales' statement at the September 17 Melrose Board meeting addressed that public concern. Morales' statement, "The one who is lying is you," came after Barrios denied Morales' explanation that Barrios' own lack of diligence, rather than any neglect on the part of OCED, could have delayed the clean-up campaign. While "the actual words [Morales] spoke cannot be said to be valuable to the public at large, the first amendment's protections do not turn on the social worth of the statements. ..." Waters v. Chaffin, 684 F.2d 833 (11th Cir.1982) (citations omitted). In context--i.e., an attempt to defend OCED's efforts with respect to the clean-up campaign against Barrios' public criticism--Morales' speech did relate to matters of public concern.
 
 
 18
 Morales' statements after the June 19 meeting and in his October 2 memorandum to OCED Director Martin also addressed matters of public concern. The statements conveyed Morales' assessment of Barrios' service to the goal of community development in Melrose. See Connick, 461 U.S. at 148, 103 S.Ct. at 1690-91. In making these accusations, Morales was clearly concerned with bringing to light an "actual or potential wrongdoing or breach of public trust ..." by Barrios. Id. Morales pointed to Barrios' attempted cancellation of the June 19 meeting and his behavior at the September 17 meeting as evidence of Barrios' lack of cooperation with OCED. These statements sought to inform OCED or other members of the Board that by disrupting the community development process, Barrios was not discharging his responsibilities as Chairman to the Melrose Board. These charges constituted an evaluation of Barrios' performance in his public service, and thus touched upon matters of public concern. Id.
 
 
 19
 Obviously, the references in the October 2 memorandum to Barrios' attempts to obtain kickbacks and political contributions relate to matters of public concern.
 
 B. Balancing
 
 20
 Having concluded that Morales' statements did touch upon matters of public concern, next we must evaluate the circumstances under which Morales' constitutionally protected speech prompted OCED's employment decision. Pickering sets out the analysis of controlling interests where First Amendment claims conflict with the need for orderly public administration. Egger v. Phillips, 710 F.2d 292 (7th Cir.), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), quoting Pickering v. Board of Education, 391 U.S. at 569, 88 S.Ct. at 1735. We must consider several factors in balancing the State's interest in efficient provision of public services against Morales' speech interest, including: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made. Connick, 461 U.S. at 151-55, 103 S.Ct. at 1692-94; Ferrara, 781 F.2d at 1513.
 
 
 21
 State interests weigh heavily where an employee's speech thwarts the mission of the agency or impedes the performance of the speaker's duties. Also, where an employee's speech has a detrimental impact on close working relationships or destroys harmony among coworkers, "a wide degree of deference to the employer's judgment is appropriate." Connick, 461 U.S. at 151-52, 103 S.Ct. at 1692.
 
 
 22
 Morales' statements frustrated the pursuit of community development goals in Melrose by effectively cutting off communication between the Melrose Board and OCED. Although Morales was OCED's chief contact in Melrose, he could no longer communicate with his chief contact on the Board, Chairman Barrios. Despite having committed himself to renewed efforts at cooperation with Barrios (at the meeting of June 27), Morales expressed his continued mistrust in Barrios both at the September 17 meeting and in his memorandum of October 2. Morales' statements aggravated existing mistrust between Morales and Barrios.
 
 
 23
 Morales' statements thwarted OCED's mission in Melrose by ending his effectiveness as the liaison between OCED and the Board. OCED Director Martin testified that these "disruptions" interfered with the community development process in Melrose. Morales' statements indicated that he could no longer adequately represent and protect OCED's position in Melrose.
 
 
 24
 Morales' statements at the June 19 and September 17 meetings shifted focus from the topics of the meetings, community revitalization and the clean-up campaign, respectively, to the personal animosity between Morales and Barrios. The most damaging effect of Morales' statements on the governmental interest was the destruction of the necessarily close working relationship between Barrios and Morales. The chief contact between OCED and the Melrose Board consisted of conferences between Morales and Barrios to establish an agenda for Melrose Board meetings. Morales' statements at the June 19 and September 17 meetings were couched in terms certain to alienate the Board's chairman, Barrios. In light of Morales' admission that a difficult working relationship between himself and Barrios predated the June 19 meeting, the tenor of his criticisms could only have aggravated any existing tension between himself and Barrios. Since Morales' duties as principal planner for Melrose required that he maintain a regular and close working relationship with Barrios, the effect of his statements was to bring the community development process in Melrose to a virtual halt.
 
 
 25
 The time, place and manner in which Morales' remarks were uttered further contributed to the disruption of the community development process. While Morales' poor choice of words in criticizing Barrios might be less significant in a private context,[5] when spoken at the public meetings of the Board these remarks impeded OCED's interests in Melrose. In context, these remarks could not be seen merely as Morales' personal opinion as an individual citizen. The danger was that OCED would be discredited by Morales' outbursts, in the eyes of the Board and the public. Other Board members and members of the Melrose community at large were present at a meeting in which a principal planner accused the target area Chairman of lying. Board members and at least one member of the community at large were present at a meeting in which an OCED principal planner called the Chairman a "Machiavellian politician." In exercising his right to engage in speech, Morales risked associating OCED with statements bound to strain relations with the Board.
 
 
 26
 The context in which Morales' remarks were made is also relevant in weighing his speech interests against the interest of OCED. Speech critical of office policy or personnel may warrant greater First Amendment protection where it is based solely on an interest in improving the performance of the office. See Connick, 461 U.S. at 153, 103 S.Ct. at 1693. On the other hand, where an employee's speech arises out of his own ongoing personnel dispute, "additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office." Id. at 153, 103 S.Ct. at 1693. Morales' remarks defended OCED's performance in Melrose, and criticized only Barrios. This criticism arose from Morales' apparently genuine concern over Barrios' lack of integrity and his subordination of the interests of the community to his personal political interests. Morales' remarks were not triggered by the transfer itself, and thus did not arise out of the employment dispute. Although this context of the remarks does not indicate that any additional deference should be given to the employer's decision, the considerations discussed above nevertheless tilt the Pickering balance in favor of OCED. Morales' speech impeded OCED in fulfilling its responsibilities in Melrose, and undermined Morales' effectiveness in his job. The necessarily close working relationship between Morales and Barrios was destroyed. Moreover, the time, place, and manner in which Morales made the offending statements further contributed to the loss of effectiveness in Melrose.
 
 
 27
 This case, like all cases involving the Pickering balance, turns upon the particular facts and circumstances. We conclude here that Morales' statements so severely impeded his own effectiveness and the effectiveness of OCED in the Melrose area that the governmental interest at stake in this case clearly outweighs Morales' speech interest.
 
 III. CONCLUSION
 
 28
 Although we conclude that Morales' speech did address matters of public concern, we conclude that the Pickering balance tilts clearly in favor of OCED's governmental interests. Accordingly, we reverse and remand for entry of judgment in favor of OCED.[6]
 
 
 29
 REVERSED and REMANDED.
 
 
 
 *
 Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 OCED is the Office of Community and Economic Development, the governmental entity for which Morales worked and to which the Board gives advice
 
 
 [2]
 Of course, in order to prevail Morales must also show that his statements were a substantial motivating factor in his reassignment. Ferrara v. Mills, 781 F.2d 1508, 1512 (11th Cir.1986). In this case, the jury found that Morales' statements were a motivating factor in his reassignment, and also that he would not have been reassigned in the absence of such statements. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The causation issue is a factual one, Waters v. Chaffin, 684 F.2d 833, 837 n. 10 (11th Cir.1982), and these jury findings are amply supported by the evidence. Thus, in the text, we discuss only two issues--whether the speech addressed a matter of public concern, and if it did, whether the Pickering balance tilts in favor of Morales' speech interest or OCED's interest in the orderly administration of its governmental office
 
 
 [3]
 Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)
 
 
 [4]
 The law is clear that Morales bears the burden of proving that his speech addresses a matter of public concern. Ferrara, 781 F.2d at 1514. If that burden is carried, it is also clear that in the balancing process the governmental employer bears the burden of justifying the discharge. Rankin, --- U.S. at ----, 107 S.Ct. at 2898. In this case, our resolution of each of the two issues is indicated by a substantial margin, and thus the burden of proof does not affect our decision
 
 
 [5]
 Cf. Rankin, supra; Waters v. Chaffin, 684 F.2d 833, 839 (11th Cir.1982) ("Absent significant countervailing governmental interests, we are loathe to sanction the intrusion of the government's ear into the private lives of its employees.") Waters was a police captain who made comments critical of a superior officer in a private conversation with another officer while both were off-duty. Emphasizing the private context of the conversation, the court found that under the particular circumstances of the case, Waters' statement that his superior officer was "as sorry as they come and nothing but a back stabbing son of a bitch," was an unconstitutional basis for his dismissal on grounds of insubordination
 
 
 [6]
 In light of our decision, it is obvious that the district court's award of attorney's fees to Morales cannot stand, and it is accordingly vacated. OCED's arguments on appeal concerning the amount of attorney's fees are moot