L.A. (Jack) THOMASSON, Plaintiff,

v.

Jules J. MODLINSKI, et al., Defendants.

Civ. A. No. 3:94–CV–256.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 8, 1995.

Harris Dewey Butler, III, William James Pantele, Butler, Macon, Williams, Pantele & Lowndes, P.C., Richmond, VA, for plaintiff.

Lynne Jones Blain, Phillip Browder Morris, Morris and Morris, and James Walter Hopper, Richmond, VA, for Jules J. Modlinski, Edward Owens and Southside Community Services Bd.

Guy Winston Horsley, Jr., Office of Atty. Gen., Richmond, VA, for Bennett Nelson.

Neil Anthony McPhie, Guy Winston Horsley, Jr., Office of Atty. Gen., Richmond, VA, for Virginia Dept. of Mental Health, Mental Retardation and Substance Abuse Services.

Archer Lafayette Yeatts, III, Yvonne Steenstra Wellford, Maloney, Yeatts & Barr, Richmond, VA, for County of Mecklenberg, County of Brunswick, Va and County of Halifax, Va.

Frank Neil Cowan, Cowan & Owen, Richmond, VA, for City of South Boston, Virginia.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on three different motions for summary judgment filed by three groups of defendants—one by

the City of South Boston, Virginia; another by the Southside Community Services Board, Jules J. Modlinski and Edward Owens; and the third by Mecklenburg County, Brunswick County and Halifax County. Additionally, the plaintiff has filed a cross motion for partial summary judgment. For the reasons stated below, the defendants' motions for summary judgment are granted and the plaintiff's motion for partial summary judgment is denied.

## I. FACTS

At the time of the incidents alleged in the complaint, plaintiff L.A. (Jack) Thomasson ("Thomasson") was the Director of Fiscal and Administrative Services at the Southside Community Services Board ("the SCSB"). The SCSB was formed pursuant to Va.Code § 37.1–194 to coordinate the provision of mental health services in the counties of Brunswick, Mecklenburg and Halifax ("the counties"), and the City of South Boston ("South Boston"). As provided by Va.Code § 37.1–195, the South Boston City Council and the counties' Boards of Supervisors elect and appoint the members of the SCSB. The Code further provides that the SCSB "shall be responsible to the governing body or bodies of the county or city or combination thereof which established such board." *Id.* According to powers granted by statute, the SCSB's members appoint an executive director to run the agency and manage daily office affairs. Va.Code § 37.1–197. Defendant Jules Modlinski ("Modlinski") has been the executive director since January of 1983. Defendant Edward Owens ("Owens") became a member of the SCSB in May of 1989 and chair in July 1992.

As outlined by Virginia statute, the counties and South Boston approve plans and budgets for SCSB programs, Va.Code § 37.1–198, and provide funding to the SCSB. Va.Code §§ 37.1–194 and 37.1–199(b)(3). They are also responsible for "arrang[ing] for the provision of legal services to the [SCSB]." Va.Code § 37.1–195. The Code mentions nothing regarding responsibility of the local governments for setting SCSB personnel policies or for making decisions concerning SCSB employees. At one time, the Virginia Code required the local governments to approve a grievance procedure for SCSB employees. However, that responsibility was eliminated in 1989.

On December 4, 1991, Thomasson and two other employees of the SCSB, Spencer Ferguson ("Ferguson") and Daniel F. McElroy ("McElroy"), met with Modlinski in Modlinski's office. Thomasson, Ferguson, and McElroy indicated that they had observed a fellow employee, B.C. Hall[1] ("Hall"), frequently arriving at work late and leaving early. They also told Modlinski about their belief that members of the community had observed Hall outside the office during work hours. None of the three employees had supervisory responsibility over Hall, but Thomasson explained that he was voicing his concern as a taxpayer.[2]

Modlinski contends that he investigated the complaints against Hall after the December 1991 meeting, but could find no substantiation of them. By a memo dated December 19, 1991, Modlinski told Thomasson, Ferguson, and McElroy to stop following Hall and reporting on her comings and goings, because their actions were creating a difficult working environment for Hall. Thereafter, Hall filed an EEOC complaint against Thomasson, Ferguson and McElroy. On February 11, 1992, after completing an investigation, Modlinski suspended Thomasson for three days, Ferguson for five days, and McElroy for three days, all without pay. Thomasson was then placed on a two-to-ten day suspension with pay beginning February 15, 1992. On March 17, 1992, with Thomasson still

---

**1.** At the time, her name was B.C. Devin.

**2.** This meeting was not the first time that Modlinski had heard complaints regarding Hall's work habits. In 1990, Modlinski investigated a complaint filed by Hall regarding management actions taken by Flo Gaffney, Hall's supervisor at the time. During that investigation, Gaffney told Modlinski that Thomasson knew about Hall's at- tendance practices. Modlinski claims that when he followed up with Thomasson, Thomasson stated that he had no knowledge concerning Hall's attendance. According to Thomasson, he told Modlinski that he had seen Hall report late for work on many occasions. Thomasson also claims that Gaffney was fired for complaining about Hall's attendance practices.

suspended, his counsel sent Modlinski a grievance form and letter complaining that Modlinski's speech, association and due process rights were being violated. The letter was copied to the members of the SCSB, counsel for the local governments, and individual members of the county and city governing bodies. On April 15, 1992, Thomasson was fired.

Thomasson attempted to appeal his suspension through a joint grievance with Ferguson and McElroy. The SCSB challenged the attempt to file a grievance jointly, but the Halifax Circuit Court ruled that such a joint grievance was permissible, and on October 6, 1992, a grievance panel overturned the suspensions without pay.

Thomasson also sought to grieve his termination jointly with McElroy. In this instance, the Halifax Circuit Court ruled that the grievance could not proceed jointly, and required Thomasson to continue on his own. On April 28, 1993, Thomasson's firing was overturned by a grievance panel, although Thomasson claims that he was not allowed to present all of his available evidence due to witness fear and intimidation. The panel awarded Thomasson back pay, but he did not receive it until October 27, 1993, on the eve of a hearing in Halifax Circuit Court in which Thomasson was to ask the court to enforce the grievance panel's decision. Because the SCSB had reorganized, Thomasson was not reinstated to his old position, but was offered the job of Financial Services Supervisor, a position substantially similar to his previous job. The new job offered the same compensation as his old job. Thomasson claims that the new job actually includes fewer responsibilities than his old one, but the consent order entered by the Halifax Circuit Court states that the responsibilities are substantially the same.

Pursuant to 42 U.S.C. § 1983, Thomasson has brought suit against the localities, the SCSB, Owens and Modlinski, claiming violation of his first and fourteenth amendment rights. He has also included claims against Owens and Modlinski for tortiously interfering with Thomasson's employment relationship and against Modlinski for intentional infliction of emotional distress.

## II. ANALYSIS

South Boston has moved for summary judgment on the basis that the SCSB alone is responsible for all personnel matters within the agency and that the local governing bodies have no authority over such matters. The counties make a similar argument. They also contend that Thomasson's claims against them are barred by the Eleventh Amendment, and they assert that Thomasson's First Amendment rights were not violated because he was not speaking upon an issue of public concern. Owens and the SCSB contend that Modlinski was the only official with responsibility for the hiring and firing of SCSB employees. Like the counties, they also contend that Thomasson has failed to raise an issue of constitutional significance either on his due process or First Amendment claim. Thomasson has moved for partial summary judgment on his First Amendment claim, arguing that his speech was on a matter of public concern and that his comments were the cause of his firing. Because the Court finds that the defendants would be entitled to judgment as a matter of law on Thomasson's constitutional claims, the defendants' motions for summary judgment are granted and the plaintiff's motion for partial summary judgment is denied.

### A. SUMMARY JUDGMENT UNDER RULE 56

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Facts are material if they might affect the outcome of the case; there is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party, like the plaintiff, opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256,

106 S.Ct. at 2514. Furthermore, to defeat the defendants' summary judgment motions, the plaintiff must produce some evidence establishing every element on which he will bear the burden of proof at trial. *Celotex Corp v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In considering the defendant's summary judgment motions, this court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994).

### B. THOMASSON'S DUE PROCESS CLAIMS

■ Thomasson alleges that his due process rights were violated in connection with his termination, his post-termination process and in post-grievance panel decision hearings. Thomasson is fighting an uphill battle on these allegations since he was reinstated by a state grievance panel and provided with back pay. Thomasson contends that delays in the proceedings deprived him of his due process rights. He notes that he was terminated on April 15, 1992 and did not receive a panel hearing until April 13 and 14, 1993. Even though he received a favorable ruling on April 28, 1993, he was not put back to work and provided back pay until October 28, 1993.

The defendants argue that Thomasson's case was handled pursuant to the grievance procedure established by the Commonwealth of Virginia, and that those procedures provided him with an abundance of due process. While the due process clause requires provision of a hearing at a meaningful time, *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985), some of the delays were requested by Thomasson and others resulted from the replacement of a hearing officer due to a perceived conflict of interest. In addition, the appeals pursued by the SCSB were provided for by the grievance procedure.

Thomasson also alleges witness intimidation, but his evidence consists of his own feelings that some witnesses were intimidated and the statement of one co-worker that she did not testify because she feared retaliation by Modlinski. She never alleged any witness intimidation tactics. Moreover, in spite of any alleged intimidation, the grievance panel returned Thomasson to his original position with full back pay.

On this basis, the Court determines that the defendants are entitled to judgment as a matter of law on Thomasson's due process claim.

### C. THOMASSON'S FIRST AMENDMENT CLAIM

■ The government may not condition public employment "upon the surrender of constitutional rights which could not be abridged by direct government action." *Keyishian v. Board of Regents,* 385 U.S. 589, 605, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967). To prevail on his claim that the SCSB violated his First Amendment right to free expression, Thomasson must show that his speech was constitutionally protected and that his comments were a substantial or motivating factor in the SCSB's decision to terminate him. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether Thomasson's speech was constitutionally protected turns on whether the speech related to matters of public concern or mere personal interest to Thomasson. *Id.* at 146, 103 S.Ct. at 1689–90.

■ If the employee's speech does not relate to a matter of public concern, the inquiry ends, and the Court need not consider whether Thomasson's comments played a substantial role in his termination. *Id.; Arvinger v. Baltimore,* 862 F.2d 75, 77 (4th Cir.1988). However, if Thomasson's comments were related to issues of public concern and were the reason for the adverse employment decisions made by the SCSB, then the Court must focus upon whether the SCSB's actions were justified. The state, in its capacity as an employer, has an unusual interest in regulating the speech of its employees. Just like any private employer, government officials need to keep their operations running smoothly. Therefore, "[a] government employee's right to gripe about the conditions of his or her job is protected

to the same degree as that of private employees, as only under such condition is efficient government service possible." *Arvinger*, 862 F.2d at 78. As noted by the Supreme Court,

> The problem in any case is to arrive at a balance between the interests of the [government employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).

■■■■ Determining whether speech addresses a matter of public concern must be decided based on the content, form and context of the given statement based on the whole record. *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91. The Court must decide "whether the employee is speaking out as a citizen, upon matters of public concern, or as an employee, upon matters of personal interest." *Hall v. Marion School Dist. No. 2*, 31 F.3d 183, 192 (4th Cir.1994).

This elevated status for speech on issues of public concern is based upon a belief that debate on such issues is of central importance to preserving a republican form of government. As the Fourth Circuit has noted, "because debate on topics of public concern is fundamental to the American system of government at all levels, *Pickering* is designed to ensure that a governmental entity does not use its personnel decisions to influence that debate." *Arvinger*, 862 F.2d at 78.

■■■■ Based upon the content, form, and context of Thomasson's statements to his supervisor Modlinski, the Court concludes that Thomasson was not speaking on an issue of public concern. The content of the speech is undisputed—Thomasson was addressing the work habits of SCSB employee B.C. Hall. This was an argument among employees about Hall's work hours, not a dispute about how the agency should be spending its money. This speech is "most accurately characterized as an employee grievance concerning internal office policy." *Connick*, 461 U.S. at 154, 103 S.Ct. at 1694.

■■■ The form of the comments is also clear—Thomasson stated that he had come to Modlinski as a concerned taxpayer. Despite Thomasson's claims to the contrary, his label as a taxpayer rather than an employee holds no great significance in this instance. Thomasson often used the concerned taxpayer title when discussing agency business. Moreover, an internal dispute between employees does not become a matter of public concern simply because one of the staffers strikes the pose of a concerned taxpayer and invokes "a supposed popular interest in the way public institutions are run." *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir.1986).

Finally, in context, the comments most assuredly were not about a matter of public concern. Hall's work habits were the subject of gossip and disgruntlement among Thomasson, McElroy and Ferguson. The three watched her comings and goings and discussed her attendance with other staff. According to Thomasson, Hall's work habits caused morale problems among agency employees and at one point, Ferguson instituted the "B.C. Patrol," a joking reference to monitoring Hall's activities. Thomasson may well have had good reason to be upset about Hall's work habits, but voicing those concerns did not constitute speech about a matter of public concern.

Thomasson makes two arguments to demonstrate that his speech was about matters of public concern. First, he alleges that the speech had clear "whistleblowing overtones" with respect to misuse of agency funds. Second, he contends that his speech should be protected because he was communicating public criticism of Hall to Modlinski. According to Thomasson, at the December 4, 1991 meeting, Thomasson, McElroy and Ferguson all told Modlinski that people in the community were talking about Hall's absences from work.

The Court notes that the record is unclear as to whether Thomasson, Ferguson and McElroy were passing along community gossip or expressing a private grievance. The plaintiff admits that public comments merged with the employees' own observations. Meanwhile, the defendants correctly point out that Thomasson has submitted no compe-

824

tent evidence indicating that Hall's attendance practices were the subject of community discussion in South Boston. No one outside the SCSB submitted an affidavit acknowledging making such comments. However, even when the facts are interpreted in the manner most favorable to the plaintiff, his speech does not constitute discussion of matters of public concern.

Based on the evidence in the record, the speech described by Thomasson as communicating public concern could most accurately be characterized as repeating idle gossip. In communities both large and small, it is not uncommon for a citizen's most personal affairs to become the object of community discussion. Nonetheless, those affairs would not constitute matters of public concern in the *Pickering* analysis. Unfettered gossip is not essential to the functioning of republican government. Thomasson's speech about Ms. Hall in this instance qualifies as a complaint over internal office affairs, and that speech does not become cloaked with the protection of the First Amendment simply because Ms. Hall is the object of gossip outside the office.

Relying on *Jurgensen v. Fairfax County*, 745 F.2d 868 (4th Cir.1984), Thomasson contends that his comments to Modlinski, by definition, raised a matter of public concern because the citizens of South Boston were talking about Hall's work habits. Actually, *Jurgensen* supports quite the opposite conclusion. In that case, an employee of the Fairfax County Police Department was demoted after providing the *Washington Post* with a copy of an internal audit prepared by police officials. Despite the fact that a news story was written about the report, the court held that the plaintiff had no remedy under 42 U.S.C. § 1983 because "the audit report did not deal with a matter of 'public concern.'" *Id.* at 891 (Ervin, J., concurring). Thus, even when an issue is before the public, speech concerning that issue is not necessarily a matter of public concern.

Because Thomasson has failed to raise an issue of constitutional significance as required under 42 U.S.C. § 1983, the Court need not rule on the defendants' other summary judgment claims. The plaintiff's motion for partial summary judgment is denied

on this basis as well. Additionally, the Court declines to exercise its supplemental jurisdiction over Thomasson's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.