939 F.2d 908
 57 Empl. Prac. Dec. P 40,943
 Bonnie DEREMO, Brenda Mills, Joyce Fox, Plaintiff-Appellants,
v.
James C. WATKINS, individually & as Clerk of the Circuit
Court for Lake County, Lake County, Robert McKee, in his
official capacity as Chief Deputy Clerk, Don Peroddy,
individually, Defendants-Appellees.
 No. 90-3503.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 21, 1991.
 
 Howard G. Butler, Meyers & Mooney, P.A., Orlando, Fla., Courtney Johnson, Jacksonville, Fla., for plaintiffs-appellants.
 David V. Kornreich, Muller, Mintz, Kornreich, Caldwell & Casey, P.A., Orlando, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before ANDERSON and DUBINA, Circuit Judges, and GIBSON*, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Bonnie Deremo, Joyce Fox, and Brenda Mills, former employees of the Circuit Court for Lake County, Florida, brought this action under 42 U.S.C. Sec. 1983, alleging, inter alia, that their termination on the basis of protected speech violated the First Amendment to the United States Constitution. At the close of plaintiffs' case, the district court directed a verdict in favor of appellees James Watkins, Clerk of the Circuit Court for Lake County, Harry Nies, Chief Deputy Clerk, and Lake County, Florida, from which the former employees appeal.
 
 I. BACKGROUND
 
 2
 The background facts are as follows. Appellants Deremo, Fox, and Mills were employed as clerks in the Property Records Department of the Office of the Clerk of the Circuit Court for Lake County, Florida, under the direction of their supervisor, Don Peroddy. In August, 1987, appellants and a fourth co-worker met with James Watkins, Clerk of the Circuit Court for Lake County, Florida, to voice their complaints about Peroddy's sexually harassing behavior. Watkins responded to appellants' concerns by stating that he would handle the situation in one of three ways: offer Peroddy an opportunity to resign, transfer Peroddy to another department with in-house investigation, or terminate Peroddy.
 
 
 3
 During that meeting, Watkins referred to his termination of an employee, Chris Giachetti, in February of 1987, that had generated an extensive amount of publicity. He told appellants that he did not want to hear about the Peroddy situation "through the grapevine" and promised them compensation for "what they went through." The evidence does not further reveal the purpose of the compensation suggested by Watkins. Appellants assumed that Watkins intended to compensate them, monetarily or otherwise, for the mental anguish they suffered as a result of Peroddy's behavior. In addition, Watkins' reference to Giachetti's termination and the fact that 1987 was Watkins' election year indicated to appellants a motive to compensate them for their remaining silent regarding the Peroddy situation.
 
 
 4
 Watkins confronted Peroddy on the following day regarding appellants' allegations of sexual harassment, and Peroddy resigned to avoid publicity regarding the matter. Reasons for Peroddy's resignation other than the issue of sexual harassment were circulated, and Watkins wrote a "without reservation" letter of recommendation for Peroddy upon Peroddy's departure. In September, 1987, after considering and rejecting Deremo and two other candidates, Watkins appointed Don Gullickson to fill the position vacated by Peroddy.
 
 
 5
 On February 22, 1988, appellants each wrote a letter to Watkins, independently from the others, requesting the compensation Watkins had mentioned at the August meeting. Appellants approached Gullickson, their new supervisor, and asked him to hand-deliver a single envelope to Watkins, marked personal and confidential. This envelope contained all three letters. The focus of each letter was an effort to obtain personal compensation. Deremo's letter also mentioned Watkins' failure to promote her to supervisor as well as the harassment she received from Peroddy. In addition to mentioning the sexual harassment, Fox's and Mills' letters alluded to their compliance with Watkins' request to keep the Peroddy matter confidential. All three letters indicated that Watkins had promised them compensation during their August meeting.[1]
 
 
 6
 After receiving these letters, Watkins fired appellants without explanation. Watkins granted a newspaper interview a few days after appellants' termination in which he accused appellants of extortion and blackmail. At trial, Watkins stated that he fired appellants solely on the basis of the letters because he believed that they were an attempt to extort money from him as a bribe for their remaining silent about the Peroddy situation.
 
 
 7
 In October, 1988, appellants filed a complaint in district court, alleging, inter alia, that appellees had violated their First Amendment rights by terminating them on the basis of their letters. See 42 U.S.C. Sec. 1983. At the completion of appellants' case on June 6, 1990, the district court granted appellees' motion for a directed verdict. Appellants subsequently filed this appeal.[2]
 
 II. DISCUSSION
 
 8
 Appellants argue that the district court erred by directing a verdict against them on their claim that they were wrongfully terminated from employment in violation of the First Amendment. Specifically, appellants contest the district court's holding that their letters to Watkins, the basis of their termination, were not protected speech under the First Amendment.
 
 
 9
 A determination whether a public employer has improperly sanctioned an employee on the basis of the employee's speech requires " 'a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " A threshold question, before considering the balancing equation, is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern;"....
 
 
 10
 Kurtz v. Vickrey, 855 F.2d 723, 726-27 (11th Cir.1988) (citations omitted). The district court held that appellants' letters to Watkins were not protected speech because they addressed "matters of personal grievance and not public concern." We agree with the district court and reject appellants' argument.
 
 
 11
 The threshold question of whether an employee's speech may be fairly characterized as constituting speech on a matter of public concern is a question of law, subject to de novo review by this court. Eiland v. City of Montgomery, 797 F.2d 953, 957 n. 5 (11th Cir.1986) (citing Connick v. Myers, 461 U.S. 138, 150 n. 10, 103 S.Ct. 1684, 1692 n. 10, 75 L.Ed.2d 708 (1983)), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); Ferrara v. Mills, 781 F.2d 1508, 1515 (11th Cir.1986) (citing Connick, 461 U.S. at 148 n. 7, 150 n. 10, 103 S.Ct. at 1690 n. 7, 1692 n. 10). Because it is a question of law, the public concern issue is "readily susceptible to disposition" by directed verdict. Ferrara, 781 F.2d at 1515 (regarding summary judgment disposition).
 
 
 12
 "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 103 S.Ct. at 1690. In applying the "content, form, and context" analysis, the Supreme Court has directed courts to consider whether the speech at issue was made in the employee's role as citizen or as employee. Connick, 103 S.Ct. at 1690. In addition, courts have considered "the employee's efforts to communicate his or her concerns to the public"[3] and "the content of the speech." Kurtz, 855 F.2d at 727.[4] Also relevant is the employee's motivation in speaking. Ferrara, 781 F.2d at 1515.
 
 
 13
 In Kurtz, we held that two published letters and various memoranda from Kurtz, a tenured professor, to Vickrey, the university president, and several discussions between them, "may fairly be characterized as relating to matters of public concern." Kurtz, 855 F.2d at 730. We found, as an initial matter, that Kurtz's speech revealed Kurtz's concern about his own salary[5] and the personal animosity between Kurtz and Vickrey, see id. at 728, and we determined that issues of personality conflict and salary level are not matters of public concern. Id. at 729.[6] However, Kurtz's speech also concerned topics relating to the management of the university, such as the misuse of public dollars allocated for education. Kurtz, 855 F.2d at 729-30. Because "the content of his criticism of the university's spending priorities related to a matter of public concern," we held that Kurtz's speech could be fairly characterized as relating to matters of public concern under the test set forth in Connick.
 
 
 14
 On the other hand, in Ferrara, this court held that a high school teacher's complaints regarding the school's use of a collegiate registration procedure and the school's practice of filling teachers' vacancies were not public speech. Ferrara, 781 F.2d 1508. We found that Ferrara's speech regarding collegiate registration was motivated by "his inability to maintain control of students and to effectively enforce discipline, ... a matter of interest only to Ferrara." Id. at 1515-16. In addition, we found that the principal "responded to the criticism of collegiate registration and abolished the practice." Id. at 1516. In holding that Ferrara's complaint concerning teacher assignments was not public speech, we noted that Ferrara's concerns were expressed in the context of a meeting with the principal to discuss his own course assignments for the following academic year; his complaint was that another teacher had been assigned to teach an advanced course that he had requested, clearly not a matter of public interest. Id.
 
 
 15
 The letters in the instant case are readily distinguishable from the speech at issue in Kurtz and more similar to that in Ferrara. All three letters mentioned the sexual harassment of appellants by Don Peroddy. Deremo's letter expressed her disappointment regarding her lack of promotion to Peroddy's former position, and the letters by Fox and Mills referred to their compliance with Watkins' request that appellants remain silent about the Peroddy situation. The action requested by the letters was in the form of individual compensation to each respective signatory.
 
 
 16
 We assume that an employee's complaint to a superior reporting the wrongful conduct of a public official, including sexual harassment, would ordinarily be a matter of public concern. We also assume that the public concern aspect would not ordinarily be negated by the fact that the employee seeks compensation in addition to elimination of the wrongful conduct. In this case, however, appellants wrote the letters seeking compensation approximately six months after Watkins had eliminated the atmosphere of sexual harassment. Peroddy had resigned six months before the letters were written, and the record reflects that the atmosphere in the office thereafter had been completely free of that problem. The context in the instant case suggests that the claims for compensation were purely personal and unrelated to any purpose to serve the public goal of insuring that public offices are free of sexual harassment.
 
 
 17
 Not only were the letters seeking compensation written six months after the problem in the office had been completely resolved, but the immediate triggering event for writing the letters was appellants' learning via a newspaper article that personal compensation had been awarded in another sexual harassment case. Appellants failed to carry their burden of proof in the district court of establishing that their letters implicated a matter of public concern. Under the particular circumstances of this case, we conclude that appellants' letters constitute speech made in appellants' own personal interest, rather than speech implicating a public concern.[7]
 
 
 18
 For the foregoing reasons, the speech at issue in this case cannot be fairly characterized as constituting speech on a matter of public concern, and we thereby conclude that it is not entitled to First Amendment protection.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Watkins was aware that these letters, the first documentation of the Peroddy incident, were public records under Florida's Public Information Act
 
 
 [2]
 On appeal, appellants raise several other claims in addition to the First Amendment claim. We reject these other claims as having no merit and warranting no discussion
 
 
 [3]
 We recognize that " 'a public employee's freedom of speech is not sacrificed merely because the employee arranges to communicate privately with his employer rather than to spread his views before the public.' " Kurtz, 855 F.2d at 727 (quoting Givhan v. W. Line Consol. School Dist., 439 U.S. 410, 415-16, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979)). However, while not dispositive, the employee's attempt at public communication is still a relevant factor in the "public concern" analysis. See Kurtz, 855 F.2d at 729 ("Kurtz's profession of public concern loses force when it is considered that he took no affirmative steps ... to inform the public at large about, the problems with which he was so gravely concerned."). See also Terrell v. Univ. of Texas Sys. Police, 792 F.2d 1360, 1362-63 (5th Cir.1986) (holding that the contents of a notebook were not protected speech based in part on the fact that appellant "made no effort to communicate the contents of the notebook to the public"), cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987)
 In the instant case, we note that appellants proffer a reason for their failure to publicly communicate the sexual harassment issue. They contend that they remained silent at the direction of Watkins. In fact, their silence may have been one basis for Watkins' suggestion of compensation at the August meeting. Therefore, we will not weigh the public communication factor against appellants.
 
 
 [4]
 The Fifth and Ninth Circuits have considered similar factors in resolving the public concern issue. In Ayoub v. Texas A & M Univ., 927 F.2d 834 (5th Cir.1991), the Fifth Circuit affirmed a judgment notwithstanding the verdict that appellant's speech regarding pay disparity directed against foreign-born professors was not protected by the First Amendment because it did not involve a matter of public concern. The court found that appellant complained only about his own salary and that he "never attempted to air his complaints in a manner that would call the public's attention to the alleged wrong." Ayoub, 927 F.2d at 837. In McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir.1983), the Ninth Circuit held that appellant's criticism of the city's decision not to give police officers an annual raise involved a matter of public concern, in part because "plaintiff's speech was specifically and purposefully directed to the public both through city council meetings and a television interview." McKinley, 705 F.2d at 1114-15
 
 
 [5]
 In a published letter, Kurtz criticized Vickrey's characterization of the average salary of faculty members, addressing the discrepancy between his salary and the average salary quoted by Vickrey by asking, "where is my $2,000?" Kurtz, 855 F.2d at 725
 
 
 [6]
 See also Ayoub, 927 F.2d at 837 (holding, in part, that complaints focused on individual compensation do not involve a matter of public concern)
 
 
 [7]
 The letters also suggest that appellants were seeking compensation in part for their compliance with Watkins' request that they keep the Peroddy matter confidential. To the extent that this was a purpose of the letters, we conclude that no public concern was implicated