**F. Thomas CARROLL, Plaintiff,**

v.

**Robert NEUMANN, as Sheriff of the Palm Beach County Sheriff's Office, Defendant.**

**No. 00CV8470–CV.**

United States District Court,
S.D. Florida,
West Palm Beach.

April 9, 2002.

Peter Martin Bernhardt, Reid, Metzger & Bernhardt, West Palm Beach, FL, for F. Thomas Carroll.

David M. DeMaio, Whelan, DeMaio & Kiszkiel, Miami, FL, for Palm Beach County Sheriff's Office and Robert Neumann, Sheriff.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 54], filed February, 4, 2002. Defendant's motion is now ripe for adjudication.

### I. BACKGROUND

This action stems from Plaintiff F. Thomas Carroll's ("Carroll") employment with Defendant Robert Neumann as Sheriff of the Palm Beach County Sheriff's Office ("PBSO"). From 1984 until 1998, Carroll was the Chief Toxicologist Supervisor of the Toxicology Section of PBSO's Crime Lab. (Am.Compl.¶ 6.) During Car-

roll's time as Supervisor, PBSO provided toxicological-testing services to the Palm Beach County Medical Examiner's Office ("MEO"). (Am.Compl.¶ 8.) In April, 1998, the MEO terminated PBSO's services due to independent findings that PBSO had made errors in the detection of morphine. (Tremer Dep. at 10–12; DiBattista Dep. at 10–20; M. for Summary Judg.Ex. 8.) PBSO ordered an internal investigation on its toxicology section. (Lincoln Dep. at 14–15.) Carroll admitted to the investigator that he was responsible for the serious errors that had occurred in the lab. (Hawkins Dep. at 17–20; Lincoln Dep. at 14, 21; M. for Summary Judg.Ex. 9.) Carroll also admitted that he had worked on his private consulting business during PBSO working hours. (Hawkins Dep. at 33–34, 78–80; M. for Summary Judg.Ex. 9.) The internal investigation concluded that Carroll had neglected his duties with respect to the toxicology lab. (M. for Summary Judg.Ex. 9.) The head of the Crime Lab, Captain Tremor, agreed with the internal investigation and recommended that Carroll be demoted from his position as supervisor. (Tremor Dep. at 19–23, 39, 40; M. for Summary Judg.Ex. 10.) Sheriff Neumann concurred with the disciplinary recommendation of Captain Tremor that Carroll be demoted from Supervisor of the lab. (Lincoln Dep. at 18–21; M. for Summary Judg.Ex. 14) Carroll appealed the decision to a Hearing Review Board which concurred in the findings of the investigation but which recommended reversing the demotion. (M. for Summary Judg.Ex. 11) Sheriff Neumann rejected the disciplinary recommendation of the review board and denoted Carroll. (Lincoln Dep. at 77–80 M. for Summary Judg.Ex. 12.) Following his demotion, Carroll continued to work in the toxicology section as a toxicologist until March 1, 2000 at which time Carroll retired from PBSO, claiming

that he had been forced to do so. (Am. Compl. ¶ 56.)

Carroll filed his Complaint [DE 1] on June 5, 2000, alleging that he was demoted and constructively discharged by PBSO because he engaged in speech protected by the First Amendment (Count II), he was discriminated against due to his age in violation of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act ("FCRA") (Counts III, VI), and he was discriminated against due to his disability in violation of the Americans with Disabilities Act ("ADA") and the FCRA (Counts IV, VII). Carroll also alleges that PBSO retaliated against him for complaining of age and disability discrimination (Counts V, VII) and that PBSO intentionally inflicted emotional distress upon him (Count I).

After engaging in discovery, PBSO filed its Motion for Summary Judgment [DE 54] on February 4, 2002. In its motion, PBSO argues that no dispute as to material facts exists regarding Carroll's claims of intentional infliction of emotional distress, age discrimination, disability discrimination, infringement of First Amendment rights, or retaliation and that PBSO should be granted judgment as a matter of law on all of Carroll's counts.

## II. *LEGAL STANDARD ON SUMMARY JUDGMENT*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548: *see also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999).

## III. *DISCUSSION*

PBSO's arguments for summary judgment with respect to each count in Carroll's Complaint are addressed in turn.

*Count 1—Intentional Infliction of Emotional Distress*

PBSO argues that it is entitled to summary judgment on Count I because Carroll is unable to demonstrate conduct which is sufficiently "outrageous" to support a claim for intentional infliction of emotional distress. This Court agrees.

■ To prevail on a claim for intentional infliction of emotional distress, Carroll must establish that PBSO engaged in "outrageous" conduct that led to severe emotional suffering. *See Sanguinetti v. United Parcel Serv., Inc.*, Case No. 99–6235–Civ–Ryskamp, Slip Op. at 14–15 (S.D.Fla. June 16, 1999) (quoting *Williams v. City of Minneola*, 575 So.2d 683, 691 (Fla.5th Dist. Ct.App.1991)). Sufficiently "outrageous" conduct has been found in the employment setting only when the plaintiff is able to show that he was the victim of " 'relentless physical, as well as verbal, harassment' " *Id.* at 16–17 (quoting *Vernon v. Margate*, 912 F.Supp. 1549, 1559 (S.D.Fla.1996)).

■ Carroll argues that PBSO's mistreatment of him was sufficiently outrageous. He asserts that PBSO unfairly placed all the blame regarding the errors of its lab on him and that PBSO allowed and encouraged the media to portray Carroll in a negative light. Carroll also asserts that he was given a disproportionate amount of work which increased his stress level and aggravated his health problems. Even if these allegations are proven true, they do not establish relentless verbal and physical abuse. Since Carroll fails to present evidence of relentless verbal and physical abuse, there is no genuine issue of material fact regarding whether PBSO's actions were sufficiently outrageous to support a claim for intentional infliction of emotional distress. PBSO is therefore entitled to summary judgment on Carroll's Count I.

*Count II—First Amendment Claim*

PBSO argues that it is entitled to summary judgment on Carroll's First Amendment claim because Carroll's speech, which he alleges resulted in his demotion and constructive discharge, is not constitutionally protected speech. This Court agrees.

■ It is well established "that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). To establish a First Amendment claim based on an employer's retaliation for an employee's exercise of free-speech, a plaintiff must establish (1) that the speech encompasses a "matter of public concern," (2) that the employee's interests in speaking outweigh the employer's interests in promoting the efficiency of its public services, and (3) that the speech in question was a motivating factor in the employment action taken against the employee. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565–66 (11th Cir.1989). PBSO argues that Carroll's speech is not a matter of public concern, and even if it is, Carroll's interests in speaking do not outweigh PBSO's interests in promoting efficiency.

■ In determining whether an employee's speech is a matter of public concern, a court must focus on "the content, form, and context of a given statement" and whether the employee is speaking as a citizen upon matters of public concern or as an employee upon matters of personal interest. *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir.1988). An employee's motivation in speaking is a relevant consideration in determining whether the speech is a matter of public concern. *See Deremo*

*v. Watkins,* 939 F.2d 908, 910–11 (11th Cir.1991).

█ Carroll's First Amendment claim rests on three different instances of speech: (1) Carroll's criticisms of PBSO's under-funding of its toxicology lab and the resulting under-staffing and obsolete equipment; (2) Carroll's criticisms of the MEO and its employees in the mishandling of evidence; and (3) Carroll's published morphine-glucuronide study evidencing a flaw in the methodology of labs and forensics which distorts lab results. (Resp. to M. for Summary Judg. at 9–11.) Carroll argues that each of these instances of speech is a matter of public concern because each evidences corruption and flaws in PBSO and in the MEO. Furthermore, Carroll argues that he undertook his morphine-glucuronide study to help the public at large, and that the study, therefore, is a matter of public concern. Carroll's arguments fail.

Carroll's speech was related to his personal employment situation. All of Carroll's allegedly protected speech came at a time when Carroll was defending himself against the internal investigation of the errors occurring in his lab. Carroll admits that his motivation in making the statements regarding the MEO's mishandling of evidence and PBSO's refusal to adequately fund the toxicology lab was to defend himself against the internal charges being levied against him. (Carroll Dep. at 976, 986–87, 990–93, 1005–06.) Carroll also admits that he began the morphine-glucuronide study in an effort to find an alternative explanation for his lab's seeming meptitude. (Carroll Dep. at 429–32, 796–801. 990–93.)

█ It Is clear that the First Amendment does not protect speech which relates to personal employment matters. *See Kurtz,* 855 F.2d at 728–29 (holding that a public employee's comments relating to office affairs and borne of personal animosi-

ties did not relate to matters of public concern). The fact that Carroll's comments touch on matters relating to the management of PBSO or the MEO does not change the fact that Carroll's comments were very personal in nature. *See Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir.1986) (stating that "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run"); *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir.1984) (holding that teacher's speech opposing school board budget cuts, in which the teacher referenced student welfare, did not relate to public concern when it was motivated mostly by her own job security). Since Carroll's speech relates to his personal employment issues, it is not speech that is a matter of public concern. Carroll's speech is therefore not constitutionally protected, and PBSO is entitled to summary judgment on Carroll's Count II.

Even if Carroll's speech is a matter of public concern, PBSO is still entitled to summary judgment because PBSO's interests in efficiency outweigh those of Carroll's interests in speaking.

█ When a public employee speaks on a matter of public concern, a constitutional violation occurs only when the employee's interests in speaking outweigh the employer's interest in curtailing the speech in order to promote the efficiency of the public services it delivers. *See Pickering v. Board of Ed.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Eleventh Circuit has held that the employer's interest in restricting employee speech is greatest in the context of a police agency where the need for high morale and internal discipline justifies greater-than-normal restraints. *See McMullen v. Carson,* 754 F.2d 936, 939 (11th Cir.1985).

PBSO's interest in curtailing speech clearly outweigh Carroll's interests in speaking. Carroll's speech is an attempt to blame the MEO and PBSO for flaws and corruption. Such speech damages the reputations of these agencies and compromises respect for the chain of command and the efficiency of the operations within the agencies. *See Busby v. City of Orlando,* 931 F.2d 764, 774 (11th Cir.1991) (stating that in law enforcement agencies, "comments concerning co-workers' performance of their duties and superior officers' integrity can 'directly interfere with the confidentiality, esprit de corps and efficient operation of the police department' ") (quoting *Egger v. Phillips,* 710 F.2d 292, 327 (7th Cir.1983) (Coffey, J. concurring in part)). Thus, even if Carroll's speech is of public concern, Carroll cannot establish that his speech is constitutionally protected. PBSO is therefore entitled to summary judgment on Carroll's Count II.

### Counts III, VI—Age Discrimination

PBSO argues that it is entitled to summary judgment on Carroll's claims of age discrimination because Carroll cannot establish a prima facie case for age discrimination and because Carroll has failed to present evidence to suggest that PBSO's explanations for its job actions are pretext for discrimination. This Court agrees.

Under both the federal and the state laws,[1] to survive summary judgment, Carroll must establish a prima facie case of age discrimination. To establish a prima facie case, Carroll must show that he (1) is a member of a protected class, (2) is qualified for the job or benefit at issue, (3) was subjected to an adverse employment action, and (4) was treated less favorably than similarly situated employees who are not members of the protected class. *See*

*Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).

If Carroll presents evidence sufficient to establish a prima facie case of age discrimination. PBSO has the burden of articulating a legitimate, non-discriminatory reason for its actions, and if done, any presumption of discrimination is eliminated. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If PBSO articulates a legitimate non-discriminatory reason for disciplining Carroll, Carroll must show that PBSO's stated reasons for its actions are merely pretext for discrimination. *See id.* at 143, 120 S.Ct. 2097. Pretext may be established directly by evidence showing that a discriminatory motive more likely motivated the employer or indirectly by evidence that the employer's explanation is false. *See id.* To survive summary judgment, Carroll's evidence must be "in the form of specific facts ... mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

Carroll, who was fifty-nine years old when he retired, was replaced by someone who was thirty-two years old. (Carroll Dep. at 1031; Resp. to Motion for Summary Judg.Ex. E.) Carroll argues that a prima facie case is established due to the fact that he was replaced in his job by a younger person. The Eleventh Circuit has rejected such argument. *See Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1443 (11th Cir.1985) (finding that "the mere fact that one employee is replaced with another who is younger certainly does not, without more, give rise to an inference that age was even considered in the deci-

---

1. This Court's analysis of age discrimination claims is the same regardless of whether the claims are brought under the ADEA or the FCRA. *See Florida State Univ. v. Sondel,* 685 So.2d 923, 925 n. 1 (Fla.1st Dist.Ct.App. 1996).

sion to dismiss or demote the first employee").

■ In cases involving workplace discipline, the prima facie case requires the plaintiff to show that his or her employer treated people outside the plaintiff's protected class more favorably when they engaged in similar misconduct. *See Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1310–11 n. 6 (11th Cir.1998); *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir. 1989). Carroll has presented no evidence showing that a similarly situated person outside Carroll's class was treated more favorably by PBSO. Without any such showing, Carroll fails to establish a prima facie case, and PBSO is entitled to summary judgment on Carroll's Counts III and VI.

■ Even if Carroll did establish a prima facie case, PBSO is still entitled to summary judgment on Carroll's age discrimination claims because Carroll has failed to present evidence suggesting that PBSO's reasons for demoting and constructively discharging Carroll are pretext for discrimination.

PBSO argues that it demoted and constructively discharged Carroll because there was evidence that its toxicology lab was making severe errors and that Carroll was responsible for the errors because of this admitted lax supervision and neglect of duty. (Hawkins Dep. at 17–20, 33–34; M. for Summary Judg.Ex. 9; Tremor Dep. at 39–40; Lincoln Dep. at 18–21; M. for Summary Judg.Ex. 14.) These articulated reasons are sufficient to negate any presumption of discrimination.

Carroll attempts to establish that PBSO's reasons for disciplining Carroll are pretext for discrimination. Carroll argues that pretext may be inferred from the facts that PBSO did not give the toxicology lab funding for more staff and equipment, that PBSO ignored the findings of Carroll's morphine-glucuronide study, that

PBSO ignored the Hearing Review Board's disciplinary recommendation, and that PBSO added new personnel and equipment to the toxicology lab after Carroll's demotion. These facts, when viewed in the light most favorable to Carroll, fail to exhibit that PBSO disciplined Carroll for reasons other than Carroll's admitted neglect and lax supervision.

Carroll's arguments for pretext do not withstand scrutiny. The fact that PBSO denied Carroll's requests for funding for more staff and better equipment is irrelevant to the question of why PBSO demoted and constructively discharged Carroll. Carroll's funding requests were made prior to Carroll's discipline. (Carroll Dep. at 773–84; 977–78.) Carroll fails to establish any connection between the funding requests and PBSO's reasons for disciplining Carroll. Similarly, the fact that PBSO hired more personnel and bought better equipment after Carroll was demoted has no connection to PBSO's reasons for disciplining Carroll. The fact that PBSO did not mitigate Carroll's discipline after review of Carroll's morphine-glucuronide study also fails to establish pretext. The record does not establish that the study exonerated Carroll. In fact, Carroll specifically admitted that his study was only one possible explanation for the errors occurring in the toxicology lab, (Carroll Dep. 429–31, 796–801), and PBSO stated that it never considered the morphine-glucuronide study reliable or exonerating. (Lincoln Dep. at 38–39, 57–59, 89–99.) Finally, the fact that PBSO rejected the hearing review board's disciplinary recommendations also does not establish pretext. PBSO has come forward with evidence that it is not uncommon for Sheriffs to reject the disciplinary recommendations of review boards. (Lincoln Dep. at 77–80.) Carroll presents no evidence that the Sheriff rejected the hearing review board's

recommendations due to discrimination against Carroll on account of his age.

Carroll's arguments for pretext rest on conclusory assertions that have no grounding in the factual record. Since Carroll fails to present evidence establishing that PBSO's reasons for demoting and constructively discharging Carroll are pretext for age discrimination, PBSO is entitled to summary judgment on Carroll's Counts III and VI.

### Counts IV and VII—Disability Discrimination

PBSO argues that it is entitled to summary judgment on Carroll's disability discrimination claims because Carroll fails to establish that he has a disability. This Court agrees.

■ To establish a prima facie case under both the ADA and the FCRA,[2] Carroll must show that he (1) has a disability, (2) is a qualified individual, and (3) was discriminated against because of the disability. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). A disability within the meaning of the ADA is a physical or mental impairment that substantially limits one or more major life activity. *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002). To be substantially limited in a major life activity is defined as having "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.*, 122 S.Ct. at 691. If a plaintiff claims to be substantially limited with respect to the life activity of working, that plaintiff must establish that his impairment leaves him "unable to work in a broad class of jobs." *Sutton v. United Air*

*Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

■ Carroll argues that he is disabled because he has life-threatening cardiac problems. He points out that he had three cardiac episodes in 1995, one cardiac episode in 1999, and one cardiac episode in 2000. (Carroll Dep. at 496, 502–03, 786.) Carroll further points out that his doctor specifically instructed him to reduce his stress levels due to his heart problems. (Carroll Dep. at 772.) However, Carroll presents no evidence that he is unable to work a broad class of jobs due to his heart condition. In fact, Carroll admits that he was able to work and that he never took time off from work for medical reasons. (Carroll Dep. at 789.) Carroll also admits that his heart problems never restricted his ability to work, learn, perform normal daily functions, care for himself, or participate in sports. (Carroll Dep. at 730–55, 764–72, 1017–21.) Without presenting any evidence that his heart condition leaves him unable to work a broad class of jobs or otherwise impairs a major life activity, Carroll fails to establish a genuine issue of material fact regarding whether he is disabled. PBSO is therefore entitled to summary judgment on Carroll's Counts IV and VII.

### Counts v. and VII–Retaliation

PBSO argues that it is entitled to summary judgment on Carroll's retaliation claims because Carroll fails to establish that he engaged in protected activity. This Court agrees.

■ To establish a prima facie case of unlawful retaliation under the ADA, the ADEA, and the FCRA, Carroll must show (1) that he engaged in statutorily protected

---

2. This Court's analysis of disability discrimination claims is the same regardless of whether the claims are brought under the ADA or the FCRA. *See Brand v. Florida Power Corp.*, 633 So.2d 504, 509 (Fla.1st Dist.Ct.App. 1994).

conduct, (2) that he suffered an adverse employment action, and (3) that there is a causal link between the conduct and the action. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir.1998). In order to prove that he engaged in protected activity, Carroll must show that he opposed his employer's activity and that any opposition he expressed was based on a good faith, objectively reasonable belief that he had been unlawfully discriminated against. *See id.* When measuring the "objective reasonableness" of Carroll's belief, this Court must deem Carroll to know the existing substantive law. *See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir.1998).

█ Carroll cannot establish that his beliefs that he was being discriminated against due to his age and his disability were objectively reasonable. At the time Carroll believed he was being discriminated against on the basis of a disability, the law defined a disability to require substantial impairment of a major life activity. Carroll, however, has admitted that his heart condition did not restrict his ability to work, learn, perform normal daily functions, care for himself, or participate in sports. Knowing that he could do all those things without substantial impairment, Carroll could not have held an objectively reasonable belief that he was being discriminated against due to his disability. At the time Carroll believed he was being discriminated against on the basis of age, the law required that Carroll show that similarly situated people outside of his protected class received better treatment. Carroll, however, does not even allege that similarly situated people were treated better because of their younger age. Knowing that he could not compare his treatment to that of someone younger. Carroll could not have held an objectively reasonable belief that he was being discriminated against because of his age.

Because Carroll's complaints of age and disability discrimination would not have been objectively reasonable, Carroll cannot establish that he engaged in protected conduct, and PBSO is entitled to summary judgment on Carroll's Counts V and VIII.

## IV. *CONCLUSION*

For the reasons stated herein, and after consideration of the pleadings, the record, and oral argument, the Court finds that there are no material facts in dispute and that the Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's counts. For these reasons, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment **[DE 54]**, filed February 4, 2002, is **GRANTED.** Final judgment shall be entered by separate order.