[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14888
Non-Argument Calendar

_____

D. C. Docket No. 04-61301-CV-KAM

PHILLIP A. RODIN,

Plaintiff-Appellant,

CORAL SPRINGS VOLUNTEER
FIREFIGHTERS ASSOCIATION, INC.,
f.k.a. Coral Springs Volunteer Fire Department,
f.k.a. Coral Springs Firefighters Association, Inc., et al.,

Plaintiffs,

versus

CITY OF CORAL SPRINGS, FLORIDA,
a municipality,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 26, 2007)

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Rodin appeals an adverse grant of summary judgment on his First Amendment retaliation claim. Rodin served for more than ten years as a volunteer firefighter in the city of Coral Springs, defendant-appellee in this case. In late 2000, Coral Springs decided to convert its all-volunteer fire department to a semi-professional one staffed by both paid and volunteer firefighters. Rodin, then serving as president of the Coral Springs Volunteer Firefighters Association ("CSVFA"), was displeased with some aspects of this transition.[1]

On March 13, 2001, Rodin, on behalf of the CSVFA, met with various city officials to discuss his concerns.[2] Haupt, the Coral Springs Fire Chief, was present at this meeting. Rodin prepared a written agenda for the meeting and led the discussion. Rodin criticized Haupt's closing of one of the fire stations, Station 95, and claimed that the closing posed a safety risk for the area formerly served by that station. Rodin criticized Haupt's management of the department's finances. He argued that it was wasteful to hire paid firefighters who were not certified to

---

[1] Rodin also decided to run for City Commissioner sometime in 2001, in part out of a concern for the way the fire department was being run.

[2] The City alleges that the meeting took place on March 12. As the difference is immaterial, we will refer to this meeting as the March 13 meeting.

fight fires in Florida and who were not familiar with the layout of Coral Springs. He also claimed that expenditures on new badges and on a car for Haupt were wasteful. Finally, Rodin addressed the working conditions for volunteer firefighters under the new system. He reported acts of vandalism against fire trucks and air hoses, which had the potential to harm volunteer firefighters. He notified the city officials that certain volunteer firefighters had been harassed by paid firefighters; expressed concerns about a lack of training for the volunteers; and also complained that volunteers who had formerly served as officers had been demoted. Rodin proposed reopening Station 95 and staffing it with volunteer firefighters; giving volunteers a more prominent place in the department's new chain of command; and requiring volunteer officers to accompany paid officers on every call.

On March 29, 2001, Haupt informed Rodin that he had been suspended indefinitely from the fire department. Coral Springs claims that Rodin was suspended because of an incident that took place after the March 13 meeting, on March 23. Rodin, while riding a motorcycle, was involved in a traffic incident with a woman in a car. The woman made a 911 call to the effect that Rodin was impersonating a police officer. The police department conducted an investigation of the incident. Although criminal charges were never filed, the internal

investigation faulted Rodin. Rodin was suspended from his volunteer firefighting duties on March 29.

Rodin continued to protest the fire department's policies during 2001. On May 26 he sent a letter to City Manager Levinson, the City Commission, and the Florida Chief Inspector General. This letter again criticized Haupt for closing Station 95, pointed out that the closing presented a safety concern, and alleged that Rodin had been suspended in retaliation for his comments to the city officials.

On November 26, 2001, a fire destroyed a home less than one mile from Station 95 in Coral Springs. In a newspaper article that appeared the following day, Rodin reiterated his comments criticizing the closing of Station 95, and again alleged that the closing of the station posed a safety hazard to the surrounding area. Then, on November 30, Rodin received his final letter of termination from Chief Haupt.

Rodin filed suit against Coral Springs in state court on February 28, 2002, claiming libel, violation of Florida's Whistleblower's Act, and negligent supervision and retention. The court granted summary judgment to Coral City on the negligent supervision claim. The other claims went to a jury, which ruled in favor of Coral City on the libel claim but hung on the whistleblower claim. On October 1, 2004, Rodin amended his complaint to add the First Amendment

4

retaliation claim. The case was then removed to the federal district court for the Southern District of Florida. The district court granted summary judgment to Coral City on the First Amendment claim, and then remanded the state claims to state court.

Rodin has appealed the grant of summary judgment on his First Amendment retaliation claim. To establish a claim of retaliation for protected speech under the First Amendment, "the employee must show by a preponderance of the evidence that: (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a substantial part in the employer's decision to demote or discharge the employee." Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001). When the employee has shown the existence of these factors, "the burden then shifts to the employer to show, by a preponderance of the evidence, that it would have reached the same decision even in the absence of the protected conduct." Id. (punctuation omitted).

The district court addressed only the first part of this inquiry: whether Rodin's speech was on a matter of public concern. The public concern inquiry "is

a question of law, and is, therefore, readily susceptible to disposition on summary judgment." Ferrara v. Mills, 781 F.2d 1508, 1515 (11th Cir. 1986). The district court concluded that Rodin's speech at the March 13 meeting was in the nature of an employee grievance, and therefore not on a matter of public concern.[3] For this reason, the court did not consider whether Rodin might have been fired on the basis of the March 13 comments. It held that because the March 13 comments were not protected by the First Amendment, a firing based on those comments would not have violated the Constitution and therefore could not expose Coral Springs to municipal liability.

We review the district court's grant of summary judgment de novo, viewing all facts and reasonable inferences in the light most favorable to the non-moving party. Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997). Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. Whether Rodin's speech was on a matter of public concern is a question of law

---

[3] The court did conclude that Rodin's comments in the newspaper article that appeared on November 27 regarding the status of Station 95 were on a matter of public concern, and also assumed that the November 27 speech met the second part of the public employee retaliation test. The court nevertheless concluded that Coral Springs could not be held liable because Rodin had produced no evidence that the final policymaker fired him in retaliation for the November 27 comments. We do not read Rodin's brief to challenge this narrow holding, and, in any event, we doubt that Rodin submitted evidence to create a genuine issue of fact as to whether the final policymaker fired him in retaliation for his November 27 speech.

reviewed de novo. Ferrara, 781 F.2d at 1515.

We conclude that the district court erred in characterizing Rodin's March 13 comments at the meeting with public officials as mere employee grievances. "Speech addresses a matter of public concern when the speech can be 'fairly considered as relating to any matter of political, social, or other concern to the community.' " Fikes v. City of Daphne, 79 F.3d 1079, 1083 (11th Cir. 1996) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983)). "Whether the plaintiff's speech addressed a matter of public concern depends upon the content, form and context of the statement considered in light of the entire record." Martinez v. City of Opa-Locka, 971 F.2d 708, 712 (11th Cir. 1992).

Rodin spoke on a number of matters of public concern at the March 13 meeting. First, he addressed perceived problems in the provision of fire services in the new semi-professional fire department. He criticized Haupt for the closure of Station 95. Rodin's written agenda for the meeting shows that his concerns about Station 95 were motivated at least in part by the public interest. In bold type, the agenda stated: "The activation of Station 95 bears directly on the safety of our citizens and its' [sic] manning should be a priority." We have noted that "[f]ew subjects are of more public concern to the average citizen than the

provision of basic fire and rescue services." Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995). Rodin's comments about Station 95 bore directly on the provision of fire services in Coral Springs. In retrospect, they were regrettably prescient, as a home one mile from Station 95 was destroyed by fire in November of that same year.

Rodin also advised the public officials that fire trucks and air hoses used by volunteer firefighters had allegedly been vandalized. We have held that allegations of misconduct in the provision of emergency services are a matter of public concern. See Fikes, 79 F.3d at 1084 (holding that "the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern"). Rodin's comments in this regard were directly relevant both to the safety of the firefighters and to their ability to provide effective fire services.

Rodin's comments about funding and training in the fire department were also matters of public concern. He criticized expenditures on badges, a car for Haupt, and out-of-state firefighters as wasteful. We have previously held criticism of a public institution's funding decisions to be on a matter of public concern. See Kurtz v. Vickrey, 855 F.2d 723, 729-30 (11th Cir. 1988) (professor's criticism of university president's budget decisions held to be on matter of public concern).

8

Rodin also claimed at the March 13 meeting that volunteer firefighters were not receiving enough training. Whether firefighters are receiving adequate training is also clearly a matter of public concern. See Beckwith, 58 F.3d at 1557. See also Chappel v. Montgomery County Fire Protection Dist. No. 1, 131 F.3d 564, 573 (6th Cir. 1997).

It is true that Rodin, in addition to commenting on matters of public concern, also made comments that were arguably relevant only to the private interests of the volunteer firefighters. For example, in addition to the public-minded comments recounted above, Rodin argued that volunteer firefighters should occupy higher positions in the chain of command, should be involved in a policymaking role, and should receive better work assignments. It is also clear that, as a global matter, Rodin and CSVFA were upset about the volunteer firefighters' role in the reorganized fire department.

But the cases make clear that the presence of purely private concerns alongside matters of public concern is not dispositive of the public concern inquiry. In the seminal public concern case, the Supreme Court found a matter of public concern in a single question in a questionnaire sent by a prosecutor to fellow prosecutors, even though the other thirteen questions contained matters of only private concern. See Connick v. Myers, 461 U.S. 138, 148, 103 S. Ct. 1684,

9

1690 (1983).

Rodin's speech is similar in this regard to speech we discussed in Anderson v. Burke County, 239 F.3d 1216 (11th Cir. 2001). In Anderson, the head of an emergency employees' union sent a questionnaire to political candidates to gauge their attitudes toward the union. We concluded that many of the questions dealt only with private concerns, including "grievances procedures, vacations, promotions, and benefits." We held that these matters "would ordinarily only concern people in their capacities as EMA employees, not as citizens in general." Id. at 1220. But we held that some of the questions dealt with matters of public concern, including "alleged understaffing in the 911 system and of engine companies, physical fitness standards required for certain employees, and public tax consequences of high employee turnover." Id. Such issues were matters of public concern "[b]ecause this kind of material may relate to the political, social or other interest of the community." Id. Similarly, Rodin's comments about Station 95, vandalism of fire equipment, training, and funding all related to the political and social interests of Coral Springs. The fact that Rodin also commented on grievances specific only to volunteer firefighters is not dispositive at this stage of the First Amendment retaliation inquiry, where the question is simply whether the

employee spoke on matters of public concern.[4]

The district court, in deciding that Rodin's speech was not on a matter of public concern, relied in significant part on its conclusion that Rodin was motivated solely by a desire to improve conditions for volunteer firefighters, and not by any desire to benefit the public. It is true that the motivation for an employee's speech is relevant to the public concern inquiry. See Goffer v. Marbury, 956 F.2d 1045, 1050 (11th Cir. 1992) ("A highly emphasized factor [in the public concern inquiry] is whether the speaker is in pursuit of purely private interests"); Deremo v. Watkins, 939 F.2d 908, 910-11 (11th Cir. 1991) ("Also relevant is the employee's motivation in speaking").

But the district court's conclusion that Rodin's speech was motivated only by self-interest (which we review de novo, see Ferrara, 781 F.2d at 1515) is incorrect. The agenda Rodin prepared for the meeting clearly stated that the volunteer firefighters were concerned about the closing of Station 95 not only

---

[4] We went on to hold in Anderson that the speech at issue did not satisfy the second element of the First Amendment retaliation inquiry, which is "commonly referred to as Pickering balancing." Anderson, 239 F.3d at 1220. Under this head, which asks whether an employee's "First Amendment interests, as a citizen, in commenting upon matters of public concern outweigh the interest of the state, as an employer," we did consider it significant that the questionnaire dealt primarily with private concerns. Id. at 1221 ("When read in its totality, the questionnaire had far more to do with Plaintiff's grievances as an employee than with concerns of a public nature."). Accordingly, the extent to which Rodin's speech on March 13 related to private concerns may be relevant to the Pickering balancing on remand.

11

because it gave them fewer places to work, but also because it presented a risk to the area formerly served by Station 95. In the only item in bold type, the agenda stated, "The activation of Station 95 bears directly on the safety of our citizens and its' [sic] manning should be a priority." Many of his other comments clearly were motivated not just by a desire to help volunteer firefighters: for example, the comments about training, funding, and vandalism. Even the proposal to have volunteers accompany paid officers appears to have been motivated not only by a desire to improve the work for volunteers, but also to ensure that new hires not yet familiar with the roads in Coral Springs would get to fires in a timely manner.

The public-minded character of Rodin's speech is reinforced by a number of facts about the context in which he spoke. The speech was pertinent to a then-current public debate, as the fire department was in the process of changing from an all-volunteer to a semi-professional fire department. This meant that Rodin had a realistic hope of changing fire policy by bringing his comments to these policymaking officials, and supports our conclusion that he was motivated at least in part by the public interest. Moreover, Rodin was speaking not on his own behalf, but as a representative of the CSVFA, and was thus in a unique position to contribute to the ongoing debate over fire policy in Coral Springs. We have previously found the representative character of a public employee's speech to be

significant in the public concern inquiry.  See Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1540 (11th Cir. 1994) (holding that testimony regarding sexual harassment in sheriff's office involved matter of public concern, in part because employee was speaking on behalf of others who had been harassed, not on behalf of her own private claim).  See also Anderson, 239 F.3d at 1219 (matter of public concern in questionnaire circulated by head of emergency employees' union to political candidates).  That Rodin had a public motive is also supported by the fact that he was a volunteer firefighter, not a paid city employee.  There is no evidence in the record that Rodin would have personally benefitted from any of the proposals he made on behalf of the CSVFA.  The context of Rodin's statements shows that they were motivated in significant part by the public interest: specifically, a desire to improve the fire department.

Nor have we ever held that speech must be motivated entirely by a public-minded purpose in order to receive First Amendment protection.  Such a view would be inconsistent with Connick, where the Supreme Court found a matter of public concern in the questionnaire circulated by a prosecutor, even while recognizing that thirteen of the fourteen questions dealt with purely private concerns, and while recognizing that the questionnaire was chiefly intended to gather information with which to embarrass the prosecutor's superiors.  Connick,

13

461 U.S. at 148, 103 S. Ct. at 1691.  See also Maples v. Martin, 858 F.2d 1546, 1553 (11th Cir. 1988) (citing Connick, and stating that "the Supreme Court had held that even a document that touches upon matters of public concern in only a most limited sense should be considered protected speech").

Our subsequent cases have found matters of public concern in cases where the employee speaker was not motivated entirely by the public interest.  For example, in Anderson, where the head of the emergency employee organization sent a questionnaire to political candidates, we found that the questionnaire was primarily intended to gauge the candidates' attitude toward pay increases for emergency employees.  Anderson, 239 F.3d at 1220.  We nevertheless found some matters of public concern embedded in the questionnaire.  And in Kurtz, we found that while some of a university professor's speech directed against the president of the university was motivated by personal concerns (including a desire to receive a salary increase), other statements were motivated by public concern and qualified for First Amendment protection.  See Kurtz, 855 F.2d at 728 (finding a matter of public concern even though "a substantial portion of Kurtz's expressions related to matters not properly characterized as relating to public concern").

In the cases where we have found no matter of public concern, we have concluded that the motivation behind the employee's speech was purely private.

14

For example, in <u>Morgan v. Ford</u>, 6 F.3d 750 (11th Cir. 1993), we rejected an employee's claim that her personal sexual harassment complaint was a matter of public concern. We found that, in context, the employee's motive for speaking was simply to improve her own working conditions, not to engage in a public debate on sexual harassment. <u>Id.</u> at 755 ("Morgan's speech was driven by her own entirely rational self-interest in improving the conditions of her employment"). In <u>Pearson v. Macon-Bibb County Hosp. Auth.</u>, 952 F.2d 1274 (11th Cir. 1992), the plaintiff claimed protection for statements made about the cleanliness of the operating room where she worked. <u>Id.</u> at 1278. We concluded that, in context, these statements were simply being used to shift blame away from herself in an incident of uncleanliness, and in no way were intended to contribute to a public debate about cleanliness in operating rooms. <u>Id.</u> at 1278-79. In <u>Deremo v. Watkins</u>, 939 F.2d 908 (11th Cir. 1991), employees threatened to disclose sexual harassment by a former supervisor if they did not receive monetary payments, and were fired instead. We found that in context the speech was only motivated by private interests, because the supervisor had already left and the employees made no attempt to contribute to any debate on sexual harassment in the workplace. <u>Id.</u> at 912. Here, by contrast, there is substantial evidence showing that Rodin was also seeking to contribute, in a representative capacity, to an ongoing dispute

15

about fire policy in Coral Springs. His speech was therefore more than simply a relaying of employee grievances.

In concluding that Rodin's speech was not on a matter of public concern, the district court also relied on the fact that it was not publicly disseminated. Public dissemination is not, however, necessary for speech to be on a matter of public concern. We have stated that "a court cannot determine that an utterance is not a matter of public concern solely because the employee does not air the concerns to the public." Morgan, 6 F.3d at 754 n.5. See also Kurtz, 855 F.2d at 727 ("focusing solely on [public dissemination] does not fully reflect the Supreme Court's directive that the content, form, and context of the speech must all be considered"). In Connick, the questionnaire at issue was sent only to other prosecutors in the district attorney's office, yet the Court found that one of the questions was on a matter of public concern. See Connick, 461 U.S. at 141, 103 S. Ct. at 1687. We have since held that speech relates to a matter of public concern in numerous instances where the speech was relayed only to decisionmakers and not to the general public. See, e.g., Fikes, 79 F.3d at 1081 (police officer speech protected, even though only reported police misconduct to Alabama Bureau of Investigation); Martinez, 971 F.2d at 712 (report of inappropriate expenditures made only to appropriate authorities was speech on matter of public concern).

16

Similarly, the fact that Rodin may have made his comments only to policymaking officials did not change the fact that many of his comments were on matters of public concern.[5]  Indeed, Rodin had a good reason for bringing his concerns to those officials: he hoped to affect the policy of the department as it underwent a dramatic change from an all-volunteer to a semi-professional force.[6]

Moreover, where we have found a lack of public dissemination to be significant, it has often been because that fact confirmed the speaker's purely private motivation.  See, e.g., Morgan, 6 F.3d at 755 (in answering question whether "the purpose of Morgan's speech was to. . . further her own private interest," finding it significant that she "did not relate her concerns about sexual harassment to the public"); Pearson, 952 F.2d at 1278-79 (fact that Pearson's speech "in no way draws the public at large or its concerns into the picture" reinforced conclusion that her speech only "concerned the circumstances of her own employment").  Here, where there is ample other evidence of Rodin's public-

---

[5] Rodin presented evidence of public dissemination in his motion for reconsideration. The district court refused to consider that evidence.  Because we conclude that Rodin's speech was on a matter of public concern even without public dissemination, we need not decide whether the district court was correct in refusing to consider the additional evidence.

[6] In fact, the Supreme Court has recognized that in Pickering balancing (the second step of the First Amendment retaliation inquiry), the fact that a statement of public concern is made in private can actually support the employee speaker.  See Rankin v. McPherson, 483 U.S. 378, 107 S. Ct. 2891, 2899 (1987).

17

minded purpose, and where his voicing of the concerns in private to policymaking officials is perfectly consistent with the purpose he was trying to achieve, the lack of public dissemination is not so significant in the public concern inquiry.

We thus conclude that some of Rodin's speech at the March 13 meeting was on a matter of public concern. The comments about the closing of Station 95, the alleged incidents of vandalism of fire equipment, the department's funding priorities, and the department's commitment to training can all be "fairly considered as relating to. . . matter[s] of political, social, or other concern to the community." Connick, 461 U.S. at 146, 103 S. Ct. at 1690. Public employee speech on matters of public concern receives protection under the First Amendment, partly because public employees are well situated to provide information on matters of public concern, both to the public and to decisionmakers. See Pickering v. Board of Educ., 391 U.S. 563, 572, 88 S. Ct. 1731, 1736 (1968) ("Teachers are, as a class, the members of the community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."). As someone who had been a volunteer firefighter for more than ten years, and as president of the CSVFA, Rodin was such an employee. Because he spoke on

18

matters of public concern, he satisfied the first element of the First Amendment retaliation inquiry.[7]

It remains for the district court to conduct the rest of the First Amendment retaliation inquiry. Namely, the court must decide whether Rodin's "First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees," whether Rodin's speech "played a substantial part in the employer's decision to demote or discharge the employee," and if so,

---

[7] Two of our sister circuits have held the same on similar facts. Chappel v. Montgomery County Fire Protection Dist. No. 1, 131 F.3d 564 (6th Cir. 1997), involved a plaintiff who provided EMT and fire services in the local community. He was also a trained paramedic. As there was no paramedic program in his community, he was personally interested in having the community support such a program. While the community was considering whether to institute a paramedic program, he made statements at a board meeting criticizing, among other things, the financial management and the training provided by the fire department. Id. at 573. The Sixth Circuit held that his statements involved a matter of public concern. With respect to his statements about training problems in the fire department, the Court said, "Firefighters train and operate to serve and protect the public from significant dangers. . . Chappel's speech on these issues was clearly within the ambit of the First Amendment's protection." Id. at 578-79. The Court rejected the defendants' argument that Chappel's speech was motivated solely by the desire to secure a paramedic job, concluding that his speech also significantly impacted a public debate on the provision of emergency services in the community. Id. at 575.

In Moore v. Kilgore, 877 F.2d 364 (5th Cir. 1989), a firefighter spoke to the news media as president of a firefighter's union. He criticized the department, alleging that it had insufficient manpower. Id. at 367. He was subsequently disciplined for his statements. The Fifth Circuit held that his comments related to a matter of public concern because "[t]he public, naturally, cares deeply about the ability of its Fire Department to respond quickly and effectively to a fire." Id. at 370. The Court found for the firefighter despite the arguable presence of a private motive as well, holding that because "mixed motivations are involved in most actions we perform everyday; we will not hold Moore to herculean standards of purity of thought and speech." Id. at 371-72.

19

whether the employer "would have reached the same decision even in the absence of the protected conduct." Anderson, 239 F.3d at 1219. The district court must also reconsider its holding on municipal liability, since its original holding relied on the fact that the March 13 speech was unprotected.[8] Accordingly, the decision of the district court is

REVERSED and REMANDED.

---

[8] Although the district court's opinion is not entirely clear, we construe its statement–that "Plaintiff has failed to present any evidence that City Manager Levinson's decision to sustain Plaintiff's termination was based on a retaliatory motive"–as taking into account only the evidence relating to Rodin's November 27 speech. In other words, we construe the district court's no-retaliatory-motive holding as discounting the March 13 speech because it was not on a matter of public concern. To the extent that the district court indicated that there was no genuine issue of material fact (as to Levinson's retaliatory motive) even considering all the circumstances surrounding the March 13 speech, we vacate any such holding. That issue–i.e. whether there is a genuine issue of fact with respect to Levinson's motive to retaliate based on the March 13 public concern speech–was not adequately discussed in the district court opinion and is not adequately briefed on appeal. Accordingly, we prefer for the issue to be examined on remand in light of our holding in this opinion.